53 A.3d 1159

George J. CARROLL

v.

STATE of Maryland.

No. 126, Sept. Term, 2011.

Court of Appeals of Maryland.

Sept. 27, 2012.

680

Brian C. Rabbitt, Assigned Public Defender (Williams & Connolly LLP, Washington, D.C.; Paul B. DeWolfe, Public Defender, Office of Public Defender, Baltimore, MD), on brief, for Petitioner.

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

BARBERA, J.

Petitioner, George Carroll, was tried before a jury in the Circuit Court for Frederick County and convicted of four counts of attempted armed robbery, four counts of conspiracy to commit those offenses, and related crimes. In his appeal to the Court of Special Appeals, Petitioner argued, among other claims of error, that the reasonable doubt instructions were constitutionally deficient and in violation of Maryland Rule 4–325(c), because the instructions did not include the advisement that, in order to convict Petitioner of any of the charged crimes, the jury must be convinced beyond a reasonable doubt that the State proved every element of the crime. Petitioner also contended that the law does not permit separate convictions and sentences for what is but a single conspiracy, and that principles of fundamental fairness dictate that the conspiracy conviction should merge with the convictions of attempted armed robbery.

The Court of Special Appeals agreed with Petitioner that the four conspiracy convictions should merge, leaving but one such conviction. *Carroll v. State,* 202 Md.App. 487, 518–19, 32 A.3d 1090, 1107–08 (2011). The Court rejected Petitioner's remaining contentions, holding that the instructions satisfied the constitutional requirement that the jury be advised of the State's burden to prove beyond a reasonable doubt each element of the charged crimes, and that fundamental fairness does not require merger of conspiracy to commit armed

robbery and attempted armed robbery. *Id.* at 503–04, 518, 32 A.3d at 1098–99, 1107. Petitioner sought, and we granted, review of the latter two holdings of the Court of Special Appeals. *Carroll v. State,* 425 Md. 227, 40 A.3d 39 (2012). For reasons we shall explain, we affirm the judgment of the Court of Special Appeals.

I.

On the night of April 24, 2010, four teenagers, Andrew Caroglanian, Joshua Phillips, Jessica Goldzwig, and Lauren Jacobsen, went camping in Frederick County, Maryland. As Andrew and Joshua were setting up their tent, they were approached by Petitioner and two other men, Nicholas Cann and Zachary Lee. Petitioner and Cann each carried a machete, and Lee carried a baseball bat. The encounter was not hostile, although Andrew testified that he "thought there would be trouble" because the men were carrying weapons. After a brief conversation, Petitioner, Cann, and Lee invited the teenagers to visit the men's campsite, which was situated nearby. Andrew and Joshua responded that they would consider the offer and perhaps visit later.

Fifteen to twenty minutes later, the four teens were inside their tent when they saw people adding wood to the campfire. They also heard and saw shadows of something striking the outside of the tent. Petitioner, Cann, and Lee told the teens to "get the fuck out of the tent and give us everything you have." Lauren was able to call 911 from a cell phone to alert the police of the situation before she was forced from the tent. Petitioner, Cann, and Lee wielded machetes and a baseball bat while repeatedly demanding money and valuables from the teenagers. Andrew gave them $100 from his wallet and Lauren gave them another $100 from Andrew's vehicle. Petitioner also instructed the teenagers to put all of their cell phones into a pile. Lee told them to hand over any personal identification cards, warning that he would kill them if they ever notified the police. Petitioner and the other two men began shouting at each other while demanding more money from the teenagers. Wanting to get out of the woods and into

a more populated area, Andrew offered to drive to the ATM to retrieve more money. Petitioner and his confederates eventually agreed to that offer.

After some argument about who would go in the vehicle to the ATM, it was decided that Cann would ride in the front passenger's seat while Andrew drove. Joshua, Jessica, and Lauren were allowed to sit in the backseat. Cann told those inside the vehicle that he had a gun, and he gripped his waistband area. In an attempt to alert oncoming cars to their situation, Andrew flashed his vehicle's high beams while driving. When a police officer approached their vehicle, Andrew mouthed the word "help" and then got out of the vehicle. He told the police that Cann had a gun. Police arrested Cann at the vehicle and later apprehended Petitioner and Lee near the campsite.

In an interview with police, Petitioner initially denied going to the campsite but later admitted he was present. Petitioner attempted to minimize his involvement in the incident by telling the police that he was not part of any plan and did not threaten anyone.

The State secured a 27–count indictment against Petitioner charging him with one count of armed robbery; one count of kidnapping; one count of theft less than $1000; and four counts each of conspiracy to commit armed robbery, attempted armed robbery, assault in the second-degree, reckless endangerment, false imprisonment, and carrying a deadly weapon with intent to injure.

At trial, Petitioner asked the court to modify Maryland Criminal Pattern Jury Instruction (MPJI–Cr) 2:02, which addresses the presumption of innocence and reasonable doubt. That instruction states in relevant part:[1]

---

1. MPJI–Cr 2:02 reads in its entirety:

The defendant is presumed to be innocent of the charges. This presumption remains throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.

> The defendant is presumed to be innocent of the charges. This presumption remains throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.

> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his][her] innocence.

Petitioner asked the court to add to the above language of the pattern instruction that "[t]he State has the burden to prove each element of a charge beyond a reasonable doubt." After some discussion among the court, defense counsel, and the prosecutor (who objected to Petitioner's request), the court gave MPJI–Cr 2:02 with the words "of each charge" tacked onto the second sentence quoted above, so that it read: "This presumption remains on Mr. Carroll throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the Defendant is guilty **of each charge**."

Petitioner also requested that the MPJI–Cr instruction for each of the charged offenses be amended to add, after the list of the elements for each crime, the following words: "In order for the person to be convicted, the State must prove beyond a reasonable doubt each of these ... elements." The court declined that request and, for all but the conspiracy charge, instructed the jury in accordance with the pertinent pattern

---

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his][her] innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. If you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

instruction for each crime charged. On the conspiracy charge, the court gave, instead of the MPJI–Cr instruction, the following instruction based generally on the conspiracy instruction found in David E. Aaronson, *Maryland Criminal Jury Instructions and Commentary,* vol. 1 § 4.21 (3d ed. 2009):

[A] conspiracy is an agreement between two or more persons to commit a crime. And a conspiracy is in itself a separate crime. It exists when two or more persons enter into an agreement to accomplish a criminal or unlawful purpose. In order for a person to be guilty of this offense the State must prove beyond a reasonable doubt that the Defendant or one or more other persons entered into an agreement, that the object of the agreement was criminal or unlawful, and that there was a joint intent to enter this agreement.

The jury found Petitioner guilty of four counts each of attempted armed robbery, conspiracy to commit armed robbery, second-degree assault, reckless endangerment, and false imprisonment. At sentencing, the court merged the false imprisonment, reckless endangerment, and second-degree assault convictions, and sentenced Petitioner to serve a total of 18 years' incarceration, with a consecutive 20 years suspended, followed by five years of probation.

Petitioner filed a timely appeal to the Court of Special Appeals, which, as mentioned, issued a reported opinion affirming in part and vacating in part the judgments of conviction. *Carroll,* 202 Md.App. at 519–20, 32 A.3d at 1108. We issued a writ of certiorari to answer the following questions presented by Petitioner:

1. Is a defendant entitled, upon request, to an instruction expressly informing the jury that the State has the burden of proving each element of every charged offense beyond a reasonable doubt?

2. Should convictions for the inchoate crime of conspiracy to commit armed robbery be merged with convictions for the inchoate crime of attempted armed robbery as a matter of fundamental fairness?

## II.

### *The Reasonable Doubt Instructions*

Petitioner contends that the jury instructions, other than the instruction on the charge of conspiracy, do not satisfy the requirements of the Due Process Clause of the Fourteenth Amendment and its counterpart provision in Maryland, Article 24 of the Maryland Declaration of Rights.[2] Petitioner argues that, because the jury was not expressly advised that the reasonable doubt standard must be applied to each element of each offense, there was a "reasonable likelihood" that the jury convicted him based on less than what is mandated by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Winship* holds that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. 1068; *accord Savoy v. State*, 420 Md. 232, 246, 22 A.3d 845, 853–54 (2011) ("The Due Process Clause . . . requires the State to prove every element of an offense charged beyond a reasonable doubt."). Petitioner further asserts that the court's refusal to include defense counsel's proposed language in the jury instructions violated Maryland Rule 4–325(c), which provides in pertinent part that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding."

In response, the State directs us to *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Victor*, the Supreme Court, while recognizing the rule established in *Winship*, held that no "particular form of words" need be used in advising the jury of the burden of proof required for conviction. *Id.* at 6, 114 S.Ct. 1239. The State argues that

---

2. The Fourteenth Amendment states, in pertinent part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights provides, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

MPJI–Cr 2:02 and the pattern instructions for each charged offense, read together, adequately conveyed to the jury that it was required to find Petitioner guilty, beyond a reasonable doubt, of each element that comprised the offenses. The State asserts that the jury was not reasonably likely to have interpreted the court's instructions in the way Petitioner suggests. Therefore, according to the State, the language proposed by Petitioner is not constitutionally required and, consequently, there is no violation of Maryland Rule 4–325.

The standard by which we assess the propriety of a trial court's refusal to give a requested instruction is well known. "A trial court must give a requested jury instruction where '(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given.'" *Cost v. State,* 417 Md. 360, 368–69, 10 A.3d 184, 189 (2010) (quoting *Dickey v. State,* 404 Md. 187, 197–98, 946 A.2d 444, 450 (2008)). The "instructions are reviewed in their entirety" and "[r]eversal is not required where the jury instructions, taken as a whole, sufficiently protect the defendant's rights and adequately covered the theory of the defense." *Fleming v. State,* 373 Md. 426, 433, 818 A.2d 1117, 1121 (2003). We apply an abuse of discretion standard to the court's decision not to give a requested instruction, yet we will not hesitate to reverse a conviction if we conclude that "the defendant's rights were not adequately protected." *Cost,* 417 Md. at 369, 10 A.3d at 189.

The parties agree, and there can be no serious dispute, that the first prong of what we here shall refer to as the *Cost* test is satisfied in that the instructions Petitioner sought accurately state the law. Indeed, the federal and Maryland constitutions require that in order to convict a defendant in a criminal case the jury must be convinced that the State has proven each element of a charged offense beyond a reasonable doubt.

The parties also agree that the second prong of the *Cost* test is met in that the requested instructions are applicable to the facts of the case. We concur. Indeed, the same can be

said of any accurate instruction on the burden of proof, whether proposed in a civil or criminal case.

The parties' dispute focuses on the third prong of the *Cost* test. The parties disagree about whether the instructions given fairly covered the requirement that the jury be advised of the State's burden to prove beyond a reasonable doubt each element of every offense charged. For the reasons that follow, we conclude that the instructions, read as a whole, satisfy constitutional requirements.

 The constitutional sufficiency of an instruction depends, not on whether the jury *could have* applied the instructions in an unconstitutional manner, but on "whether there is a *reasonable likelihood* that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor,* 511 U.S. at 6, 114 S.Ct. 1239 (emphasis added). And as the State points out, under *Victor,* no "particular form of words" is required by the Constitution when instructing the jury on the State's burden of proof. *See id.* at 5, 114 S.Ct. 1239.

 The court instructed the jury with a near verbatim recitation of MPJI–Cr 2:02. The detailed description of the concept of proof beyond a reasonable doubt set forth in that pattern instruction conveyed to the jurors that they must evaluate guilt based on that standard of proof. Then, in each of the separate instructions on the offenses charged, the court referred to the burden of proof when introducing the elements of each charged offense with the words "the State must prove" those elements. Read together, the reasonable doubt instruction (emphasizing the meaning and importance of that standard of proof) and the repeated message in every instruction that the State "must prove" the elements of each charged offense adequately imparted to the jury the mandate that the State must prove each element beyond a reasonable doubt.

Other courts are in accord. *See People v. Orchard,* 17 Cal.App.3d 568, 576–77, 95 Cal.Rptr. 66, 71 (1971) (holding that an instruction on the State's burden to prove each element of the charged offense beyond a reasonable doubt was

not required when the court instructed on the State's burden of proof beyond a reasonable doubt, and then defined the essential elements of the charged offense); *City of Billings v. Briner*, 228 Mont. 518, 744 P.2d 877, 878 (1987) (holding that there was no error in the court's failing to instruct specifically that the State must prove each and every element of the offense beyond a reasonable doubt, because the court had instructed the jury that the government had the burden to prove the defendant's guilt beyond a reasonable doubt and then instructed the jury on the elements of the charged offense).

Petitioner counters with two cases on the other side of the ledger, *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977) and *People v. Newman*, 46 N.Y.2d 126, 412 N.Y.S.2d 860, 385 N.E.2d 598 (1978). In both cases, the courts found reversible error where a trial court did not provide a satisfactory explanation of the State's burden of proof in the jury instructions. In *Bishop*, the court held that "[t]he defense had an absolute right to have the jury instructed not only as to the quantum of proof required to establish guilt but also that the requirement extended to each of the material elements of the offense." 372 A.2d at 796. The holding in *Newman* is narrower: "We hold that . . . it was reversible error for the trial court to have refused a request to charge that the People had the burden of proving every element of the crimes charged beyond a reasonable doubt when the ground for that refusal was that the court had already advised the jury in a preliminary address at the outset of trial." [3] 385 N.E.2d at 599.

---

**3.** Similarly, in one of our own cases, *Lansdowne v. State*, 287 Md. 232, 412 A.2d 88 (1980), we held that, where the trial judge's preliminary remarks at the outset of trial explained "reasonable doubt" but then the trial judge did not include any such definition in his instructions at the close of the evidence, the instruction requested by defense counsel explaining reasonable doubt was not "fairly covered" by the instructions given, because preliminary remarks do not constitute an instruction. *Id.* at 247, 412 A.2d at 95–96. This has no bearing on our decision in this case because, here, the trial judge read MPJI–Cr 2:02 in conjunction with the pattern instructions for each offense at the close of the evidence before the jury began deliberations.

■ Although *Bishop* and *Newman* are informative from a "best practices" perspective, we are, in the end, not persuaded that an otherwise-correct reasonable doubt instruction is rendered constitutionally deficient by the omission of language that each element of the offense charged must be proven beyond a reasonable doubt. We adhere to *Victor*, which declares that the constitutional "inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." 511 U.S. at 6, 114 S.Ct. 1239 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)); *accord Savoy*, 420 Md. at 246–47, 22 A.3d at 854. *See also* Aaronson, *Maryland Criminal Jury Instructions and Commentary*, Comment to § 1.05, at 1–50 (commenting that the reasonable likelihood standard "requires a court to evaluate not what a reasonable juror could or might find but rather 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence' ") (quoting *Boyde v. California*, 494 U.S. 370, 381, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). We therefore hold, as did our colleagues on the Court of Special Appeals, *Carroll*, 202 Md.App. at 503–04, 32 A.3d at 1098–99, that in the present case the instructions, read as a whole, satisfy the constitutional mandate that the jury be informed that it is the State's burden to prove beyond a reasonable doubt each element of the crime(s) charged. It follows that there likewise is no violation of Maryland Rule 4–325(c).

We do not overlook this Court's endorsement of MPJI–Cr 2:02 in *Ruffin v. State*, 394 Md. 355, 906 A.2d 360 (2006). In that case we held that, "in every criminal jury trial, the trial court is required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which closely adheres to MPJI–Cr 2:02. Deviations in substance will not be tolerated." *Id.* at 373, 906 A.2d at 371. As Petitioner notes, we were not confronted in *Ruffin*, or to our knowledge in any other case, with the constitutional challenge to MPJI–Cr 2:02 presented here. Yet the strong message we sent in

*Ruffin* and in other cases before it approving the language of the pattern instruction, *see Wills v. State*, 329 Md. 370, 383–84, 620 A.2d 295, 301–02 (1993); *Merzbacher v. State*, 346 Md. 391, 404, 697 A.2d 432, 438 (1997), implies satisfaction with the constitutional sufficiency of the pattern instruction. Given our holding in the present case that MPJI–Cr 2:02—the reasonable doubt instruction that we approved in *Ruffin*—does not violate either the federal or Maryland constitution, and thus does not violate Maryland Rule 4–325(c), we find no error or abuse of discretion on the part of the trial court in issuing a nearly verbatim version of that instruction in this case.

Notwithstanding our holding, we agree with our colleagues on the Court of Special Appeals that, "[a]lthough we find no error by the court here, that is not to say that it would not be reasonable for trial courts to give the instruction requested and explicitly state that the prosecution has the burden to prove beyond a reasonable doubt each element of each charge." *Carroll*, 202 Md.App. at 504, n. 5, 32 A.3d at 1099, n. 5. As the intermediate appellate court notes, other jurisdictions include such language in the pattern instruction on the presumption of innocence and/or the burden of proof. *See id.* (listing examples). Like our colleagues on the Court of Special Appeals, we urge the Maryland State Bar Association Committee on Maryland Pattern Instructions[4] to consider amending MPJI–Cr 2:02 to include explicit language instructing that the State has the burden to prove beyond a reasonable doubt each element of each charged offense.

### III.

#### *Merger*

Petitioner argues that the trial court erred by failing to merge his conviction for conspiracy to commit armed robbery with his four convictions for attempted armed robbery. Mary-

---

4. The Maryland Bar Association subcommittee on Criminal Pattern Jury Instructions consists of judges at the trial and appellate level, prosecutors, defense attorneys, law professors, and other distinguished members of the Maryland Bar.

land recognizes three grounds for merging a defendant's convictions: (1) the required evidence test; (2) the rule of lenity; and (3) "the principle of fundamental fairness." *Monoker v. State*, 321 Md. 214, 222–23, 582 A.2d 525, 529 (1990); *see State v. Prue*, 414 Md. 531, 550, n. 11, 996 A.2d 367, 378, n. 11 (2010) (noting, as grounds for merger, "considerations of fairness in a particular case"). Petitioner acknowledges that two of these three grounds—the required evidence test and the rule of lenity—do not apply to his case. Petitioner instead relies on the principle of fundamental fairness to argue that the conspiracy and attempted armed robbery convictions should merge. Citing *Monoker*, Petitioner argues that both offenses are inchoate and the fleeting nature of the conspiracy made it "part and parcel" and "an integral component" of the attempted armed robbery. *See Monoker*, 321 Md. at 223, 582 A.2d at 529. Petitioner cites § 5.05 of the Model Penal Code for support of his contention that a person cannot be convicted of more than one offense of attempt, conspiracy, or solicitation that culminates in the commission of a single crime.

The State counters that, because conspiracy and attempted armed robbery target different conduct, the trial court properly imposed different punishments for the two crimes. The State notes that conspiracy is a common law crime that is considered complete after an unlawful agreement is made, without any overt acts required. The State argues that, as such, the court did not err in separately sentencing Petitioner for both his role in planning and agreeing to commit the armed robbery along with his two co-defendants and his participation in the attempt to complete that crime. As for Petitioner's reliance on the Model Penal Code, the State points out that Maryland has not adopted the portion of the Code that would require conspiracy and attempt convictions to merge.

■■■■ Fundamental fairness is "[o]ne of the most basic considerations in all our decisions ... in meting out punishment for a crime." *Monoker*, 321 Md. at 223, 582 A.2d at 529; *Khalifa v. State*, 382 Md. 400, 434, 855 A.2d 1175, 1195 (2004)

(observing that additional reasons for merger include "historical treatment, judicial decisions which generally hold that offenses merge, and fairness") (quoting *McGrath v. State*, 356 Md. 20, 25, 736 A.2d 1067, 1069 (1999)). In deciding whether fundamental fairness requires merger, we have looked to whether the two crimes are "part and parcel" of one another, such that one crime is "an integral component" of the other. *Monoker*, 321 Md. at 223–24, 582 A.2d at 529. This inquiry is "fact-driven" because it depends on considering the circumstances surrounding a defendant's convictions, not solely the mere elements of the crimes. *Pair v. State*, 202 Md.App. 617, 645, 33 A.3d 1024, 1039 (2011).[5]

Rare are the circumstances in which fundamental fairness requires merger of separate convictions or sentences.[6] In *Monoker*, this Court considered whether solicitation to perform a criminal act should merge with conspiracy to commit the same act. 321 Md. at 216, 582 A.2d at 526. Monoker was awaiting sentencing on fraud convictions when he solicited a group of inmates to break into the home of the principal witness against him, assault her, and steal what they could from the home. *Id.* The plot was foiled after an alert neigh-

---

5. In *Pair v. State*, 202 Md.App. 617, 649, 33 A.3d 1024, 1042 (2011), the Court of Special Appeals declined to apply the fundamental fairness doctrine to a case involving a challenge pursuant to Rule 4–345(a) (addressing correction of an illegal sentence) but decided that, even if fundamental fairness did apply, the convictions for first-degree assault, robbery, and false imprisonment still would not merge.

6. This Court and the Court of Special Appeals have sometimes considered fundamental fairness alongside the required elements test or the rule of lenity. *See, e.g., White v. State*, 318 Md. 740, 746–48, 569 A.2d 1271, 1274–75 (1990) (considering the fairness of multiple punishments in a particular situation when holding, based on the rule of lenity, that the statutory offense of child abuse and common law murder should merge when the convictions are based on the same act); *Marlin v. State*, 192 Md.App. 134, 171, 993 A.2d 1141, 1163 (2010) (merging reckless endangerment and first-degree assault under "principles of fundamental fairness or the rule of lenity" when they occurred as part of a single shooting). Our research discloses only two cases in which Maryland courts have required merger based solely on the principle of fundamental fairness: *Monoker* in this Court, and *Marquardt v. State* in the Court of Special Appeals, 164 Md.App. 95, 882 A.2d 900 (2005).

bor spotted the men scouting out the house in a van, and Monoker was convicted of solicitation and conspiracy to commit daytime housebreaking for his role in the plan. *Id.* at 217, 582 A.2d at 526. The court imposed consecutive 10-year sentences for the two convictions. *Id.*

Monoker appealed, arguing that the crime of solicitation should merge with the crime of conspiracy, based on the required elements test or the rule of lenity. *Id.* at 217–18, 582 A.2d at 526–27. The Court found neither test applicable to Monoker's situation but held that the convictions should merge under principles of fundamental fairness. *Id.* at 222–23, 582 A.2d at 528–29. The Court held that it was "unfair to uphold convictions and sentences for both crimes," remarking that the conspiracy to burglarize the witness's home ripened from the initial solicitation of an inmate to commit the same crime. *Id.* at 223, 582 A.2d at 529. In other words, the "solicitation was part and parcel of the ultimate conspiracy and thereby an integral component of it." *Id.* The Court held that it would be "fundamentally unfair" for Monoker to "suffer twice" for the greater crime of conspiracy and the lesser included offense of solicitation. *Id.* at 223–24, 582 A.2d at 529. *See also Marquardt v. State,* 164 Md.App. 95, 152–53, 882 A.2d 900, 934 (2005) (holding that malicious destruction of property merged with burglary pursuant to fundamental fairness because the destruction of property was "clearly incidental" to the burglary).

 Petitioner asks the Court to merge his conviction for conspiracy to commit armed robbery with his convictions for attempted armed robbery based solely on considerations of fundamental fairness. In determining whether merger is required, we examine first the crimes of conspiracy and attempt. "A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Khalifa,* 382 Md. at 436, 855 A.2d at 1196 (quoting *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832, 834 (1988)). The agreement at the heart of a conspiracy "need not be formal or spoken, provided

there is a meeting of the minds reflecting a unity of purpose and design." *Id.* The crime is complete when the agreement is formed, and no overt acts are necessary to prove a conspiracy. *Id.* Attempt, by contrast, requires a "specific intent to commit the offense coupled with some overt act in furtherance of the intent which goes beyond mere preparation." *Dixon v. State,* 364 Md. 209, 238, 772 A.2d 283, 301 (2001) (quoting *Bruce v. State,* 317 Md. 642, 646, 566 A.2d 103, 104–05 (1989)).

Conspiracy to commit a crime is generally distinct from the underlying crime itself. *Khalifa,* 382 Md. at 436, 855 A.2d at 1195. *See also Dionas v. State,* 199 Md.App. 483, 530, 23 A.3d 277, 304 (2011) (declining to merge second-degree murder and conspiracy to commit first-degree murder under the fundamental fairness test). In *Wooten–Bey v. State,* 76 Md.App. 603, 547 A.2d 1086 (1988), the Court of Special Appeals faced a question similar to the one presented here, as that Court considered whether attempted robbery with a deadly weapon should merge with conspiracy to commit robbery under the rule of lenity. *Id.* at 628, 547 A.2d at 1098. The Court noted that the General Assembly provided separate punishments for conspiracy and robbery with a deadly weapon. *Id.* at 629, 547 A.2d at 1099. As a result, the crimes and penalties "address different criminal behavior," warranting separate sentences. *Id.* The Court observed that the conspiracy sentence was for "planning" the robbery, and the attempt addressed the steps taken towards "consummating" the plan. *Id.* Accordingly, the Court declined to merge the two convictions. *Id.; see also Kelly v. State,* 195 Md.App. 403, 442, 6 A.3d 396, 419 (2010) (declining to merge convictions for robbery and conspiracy to commit robbery under the fundamental fairness test).

One of the principal reasons for rejecting a claim that fundamental fairness requires merger in a given case is that the crimes punish separate wrongdoing. *See, e.g., Pryor v. State,* 195 Md.App. 311, 339, 6 A.3d 343, 359 (2010) (declining to merge first-degree assault and first-degree arson under fundamental fairness because "each crime punishes a different

harm"); *Fenwick v. State,* 135 Md.App. 167, 177, 761 A.2d 1021, 1026–27 (2000) (holding that fourth-degree burglary and second-degree rape do not merge under fundamental fairness or the rule of lenity because they are distinct crimes). Petitioner argues that, under the facts of his case, the conspiracy to commit armed robbery and the attempted armed robberies were not separate offenses, but part of a continuous event. Petitioner contends that he and his co-defendants had very little time in which to form a conspiracy and the evidence of conspiracy was "fleeting, at best." According to Petitioner, "[t]he evidence at trial thus showed that the alleged conspiracy formed, if at all, during the very short interim period that [Petitioner], Lee, and Cann were at their own campsite, during the very short walk back to [the victims'] campsite, or during the course of the actual attempted armed robberies themselves." Conspiracy quickly ripened into the attempted robberies and was "part and parcel" and "an integral" component of the robbery attempts, Petitioner argues. Petitioner concludes that fundamental fairness therefore dictates that the convictions should merge.

We disagree. As Petitioner acknowledges, he and his co-defendants had the opportunity to form a conspiracy at several different points in time. In convicting Petitioner of conspiracy, the jury could have found an agreement formed at any one of those times—at Petitioner's own campsite, during the short walk to the victims' campsite, or just prior to the attempted armed robberies. The crime was complete when the agreement formed, and the evidence at trial demonstrates that this occurred *before* Petitioner and his partners undertook the attempted robberies. The coordination between the three men in demanding that the teenagers leave the tent and hand over their money demonstrated the agreement's existence. Conspiracy does not require a formal agreement or detailed discussion, so long as there is "a meeting of the minds." *Khalifa,* 382 Md. at 436, 855 A.2d at 1196 (citing *Townes,* 314 Md. at 75, 548 A.2d at 834). In the language of *Wooten–Bey,* the conspiracy sentence addressed the "planning" of the crime, and the attempted armed robbery dealt

with the steps taken towards "consummating" the plan. *Wooten–Bey,* 76 Md.App. at 630, 547 A.2d at 1099.

██ Petitioner further argues that fairness dictates merger because the conspiracy and the attempt both culminate in the commission of the same crime. Again, we disagree. If Petitioner's argument were correct, one could never be sentenced for both conspiracy and the offense that is the object of the conspiracy. What differentiates attempt from conspiracy is that attempt requires some overt act be taken in furtherance of the crime. *Dixon,* 364 Md. at 238, 772 A.2d at 300 (citing *Bruce,* 317 Md. at 646, 566 A.2d at 104–05). The attempt to complete the elements of a crime is separate and distinct from the group planning of the crime itself. One of the rationales behind charging conspiracy as a separate crime is that it acts as a "sanction against group activity." 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.4(c) (1986). A conspiratorial agreement "increases the danger to society, for by a division of labor the group is more likely to be able to bring about the criminal result." *Id.* This rationale justifies separate punishments for the conspiracy and the object offense *or* its attempt.

Petitioner finally argues that the Court should adopt the approach of the Model Penal Code, which prohibits a person from being convicted of more than one inchoate offense connected to the same crime, i.e., attempt, conspiracy, or solicitation. American Law Institute, Model Penal Code and Commentaries § 5.05 (1985).[7] We considered this argument in

---

**7.** Section 5.05 addresses "Grading of Criminal Attempt, Solicitation, and Conspiracy; Mitigation in Cases of Lesser Danger; Multiple Convictions Barred." It states, in pertinent part:

(3) *Multiple Convictions.* A person may not be convicted of more than one offense defined by this Article for conduct designed to commit or to culminate in the commission of the same crime. **Explanatory Note**

\* \* \*

Subsection (3) provides that a person may not be convicted of more than one inchoate offense for conduct designed to culminate in the commission of the same crime. *See also* Section 1.07(1)(b), which

*Monoker* but ultimately did not employ the Model Penal Code approach. *Monoker,* 321 Md. at 218, 233–24, 582 A.2d at 527, 529. We see no reason to revisit the issue.

In sum, Petitioner's convictions for conspiracy to commit armed robbery and attempted armed robbery targeted two different crimes and Petitioner properly received two separate punishments for them. The conspiracy—whether formed in Petitioner's campsite, during the walk to the victims' campsite, or shortly before the attempted robberies—was a separate and distinct act from the attempted armed robberies. We therefore hold, under the facts of this case, that fundamental fairness does not require merger of Petitioner's conviction for conspiracy to commit armed robbery with his attempted armed robbery convictions.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**

---

prohibits conviction of both the inchoate offense and the substantive offense that is its object. On the other hand, conduct that has multiple objectives, only some of which have been achieved, can be prosecuted under the appropriate section of Article 5. That is, a person may be convicted for one substantive offense and for attempt, solicitation, or conspiracy in relation to a different offense.