REPORTED
IN THE COURT OF SPECIAL APPEALS

No. 0588

September Term, 2013

GARY ROSS LATRAY

v.

STATE OF MARYLAND

Krauser, C.J.,
Zarnoch,
Raker, Irma S.
   (Retired, Specially Assigned),

JJ.

Opinion by Raker, J.

Filed: February 25, 2015

Gary Ross Latray[1], appellant, was convicted in the Circuit Court for Garrett County of robbery with a dangerous weapon, robbery, second-degree assault, theft of property having a value less than $1,000, representing a destructive device and making a false statement about a destructive device. In this appeal, he presents the following question for our review:

> "Whether the merged convictions and/or sentence/s for representation of a destructive device and/or false statement regarding a destructive device should have merged with the conviction and/or sentence for robbery with a dangerous or deadly weapon."

We shall hold that the sentences do not merge and affirm.

I.

Appellant was indicted by the Grand Jury for Garrett County with the offenses of robbery with a dangerous weapon, robbery, second-degree assault, theft of property having a value less than $1,000, representing a destructive device and making a false statement about a destructive device. The jury convicted him of all the charges. The court sentenced appellant to a term of incarceration of twenty years for robbery with a dangerous weapon and a consecutive term of incarceration of ten years for making a false statement about a destructive device.[2]

The following evidence was presented at trial. On November 20, 2009, Christina Dawson was working at the Shoe Show store when a man entered the store. The man started

_____

[1]In the record, appellant's last name is referred to as both LaTray and Latray. We shall use the latter spelling throughout for the sake of consistency.

[2]The court merged the robbery and second-degree assault charges with the robbery with a dangerous weapon charge for sentencing purposes. The court also merged the representation of a destructive device charge with making a false statement about a destructive device "for the sake of sentencing." As to the theft charge, the court vacated the sentence.

looking at boots and walked around the store looking up and down around all the aisles. When he returned to the aisle where the boots were located, Ms. Dawson asked if the man needed any assistance. He responded that he wanted to try on the mate to a certain "Harley boot" that was on display at the store. Ms. Dawson retrieved the corresponding boot, gave it to the man to try on and then checked on other customers that were in the store.

After trying on the boots, the man informed Ms. Dawson that he wanted to purchase them. Ms. Dawson took the boots to the counter and rang them up on a cash register. As she did, the man put a bag on the counter, handed Ms. Dawson a note, walked around to the cash register and then informed her that he had a gun and wanted "all the money." The handwritten note warned Ms. Dawson that there was a bomb in the box and that she had 30 seconds to hand over all of the cash. It instructed her that she was to wait for 30 minutes before calling the police, and if she called before the 30 minutes were up, the man would "blow this place up."

When Ms. Dawson opened the cash register drawer, the assailant took all of the money from the tray. He then left the store, but, moments later, he returned to the store, approached the counter and took the boots stating, "[w]ell, I might as well take these boots, too." Ms. Dawson identified appellant as the perpetrator from a photographic array and identified appellant in-court as the person who had robbed the store.

On the day of the robbery, Deputy Matthew Wrenn of the State Fire Marshal's Office went to the Shoe Show store in response to a call regarding a possible explosive device at that location. When he arrived, the whole complex had been evacuated and Ryan Chapman, a bomb technician, advised him that there was a possible explosive device on the counter in the shoe store and that there was a note indicating that it might be a bomb. Mr. Wrenn donned his bomb suit, x-rayed the suspected device and concluded that the device might,

2

indeed, be a bomb. Upon further examination, however, he found that there was no bomb inside and that the box contained a cellular phone, a half-inch socket extension, a cellular phone charger, light gauge wiring, automobile spark plugs and a t-shirt.

Sergeant Clark Warnick, a Garrett County deputy sheriff, responded to a robbery call at the Shoe Show store. He interviewed Ms. Dawson, who said that the robber had brought into the store a plastic bag that had a box in it. The robber had warned her that there was a bomb in the box and that if she did not do what he told her to do, it would go off. She indicated that although the man stated that he had a gun, she never saw it. Police collected evidence from the crime scene, including a fingerprint that was later identified as appellant's print.

Sergeant P.B. Cork of the West Virginia State Police was involved in apprehending appellant. He testified that, based upon information he had received, he arrested appellant at a residence in Upshur County, West Virginia. Sergeant Cork stated that he recovered a pair of Harley Davidson boots from the residence.

As indicated, appellant was convicted and sentenced to incarceration. This timely appeal followed.

II.

Before this Court, appellant contends that the court should have merged his conviction for making a false statement concerning a destructive device with his robbery with a deadly weapon conviction. Specifically, he posits that because the false bomb threat formed the underlying act establishing the aggravated robbery violation, as indicated by the Grand Jury Indictment, the sentence for that offense should have merged into the aggravated

3

robbery sentence. He relies on the required evidence test, the rule of lenity and principles of fundamental fairness to support his argument for merger.

Conversely, the State maintains that the court imposed properly two consecutive sentences for aggravated robbery and making a false statement concerning a destructive device. The State argues first that the convictions do not merge under the required evidence test because each offense requires proof of at least one fact that the other does not. The State argues next that appellant has not preserved his arguments for merger under the rule of lenity or principles of fundamental fairness because he did not raise them before the trial court. Nevertheless, the State maintains that neither theory of merger is appropriate in the instant matter because the offenses are distinct and the Legislature intended to punish them separately.

III.

We turn to appellant's sole issue before this Court: whether the court should have merged his convictions for robbery with a deadly weapon and making a false statement concerning a destructive device. We disagree with appellant.

The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The "Double Jeopardy" rule of the Fifth Amendment "bars multiple punishments and trials for the same offense." *State v. Long*, 405 Md. 527, 536, 954 A.2d 1083, 1089 (2008). This prohibition is applicable to the states through the Fourteenth Amendment. *Odum v. State*, 412 Md. 593, 603, 989 A.2d 232, 238 (2010); *see Benton v. Maryland*, 395 U.S. 784, 794 (1969). Although the Maryland Constitution does not contain a double

4

jeopardy clause, Maryland common law does provide "well-established protections" against double jeopardy. *Long*, 405 Md. at 536, 954 A.2d at 1089.

The preferred test to determine whether offenses stemming from the same transaction merge for double jeopardy purposes is the required evidence test. *Anderson v. State*, 385 Md. 123, 131, 867 A.2d 1040, 1044 (2005); *Cousins v. State*, 277 Md. 383, 388, 354 A.2d 825, 829 (1976). The required evidence test provides that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Thomas v. State*, 277 Md. 257, 265, 353 A.2d 240, 265 (1976). Thus, if each offense requires proof of a fact which the other does not, then "neither multiple prosecutions nor multiple punishments are barred by the prohibition against double jeopardy even though each offense may arise from the same act or criminal episode." *Cousins*, 277 Md. at 388-89, 354 A.2d at 829.

Turning to the case *sub judice*, appellant maintains that his charges of aggravated robbery and making a false statement concerning a destructive device merge under the required evidence test. Pursuant to Maryland Code (2002, Repl. Vol. 2012) § 3-403(a) of the Criminal Law Article,[3] appellant was charged in Count 1 of the indictment with aggravated robbery. The indictment states that appellant "unlawfully and feloniously, by displaying a written instrument claiming that [he] had a dangerous weapon, rob[bed] Christina Dawson . . . ." Section 3-403(a) provides as follows:

---

[3]Unless otherwise indicated herein, all subsequent statutory references to Maryland Code (2002, Repl. Vol. 2012) shall be to the Criminal Law Article.

> "(a) A person may not commit or attempt to commit robbery under § 3-402 of this subtitle:
>
> > (1) with a dangerous weapon; or
> >
> > (2) by displaying a written instrument claiming that the person has possession of a dangerous weapon."

The offense of robbery requires "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear . . . ." *West v. State*, 312 Md. 197, 202, 539 A.2d 231, 233 (1988). Section 9-504 provides for the requirements constituting the offense of making a false statement concerning a destructive device. Section 9-504 states, in pertinent part, as follows:

> "(b) A person may not circulate or transmit to another, with intent that it be acted on, a statement or rumor that the person knows to be false about the location or possible detonation of a destructive device or the location or possible release of toxic material, as those terms are defined in § 4-501 of this article."

Appellant's convictions of aggravated robbery and making a false statement concerning a destructive device each require proof of a fact which the other does not. Section 9-504, unlike § 3-403(a), requires proof of a false statement about the location or possible detonation of a destructive device. Conversely, the provision of § 3-403(a) at issue in the case at bar, unlike § 9-504, requires proof of a *written* instrument and the felonious taking and carrying away of the personal property of another. It follows that the offenses do not merge under the required evidence test.

Before we turn to the rule of lenity and principles of fundamental fairness, we address the State's concern that these theories of merger are not preserved for our review. The failure to merge a sentence when it is required is considered an inherently illegal sentence as a matter of law. *Britton v. State*, 201 Md. App. 589, 598-99, 30 A.3d 236, 242 (2011).

6

As such, a court "may correct an illegal sentence at any time." Md. Rule 4-345(a). We have held that because of the inherent illegality of the sentence, the normal preservation requirements do not apply in this context. *Pair v. State*, 202 Md. App. 617, 624, 33 A.3d 1024, 1028 (2011). Thus, we shall review appellant's arguments based on the rule of lenity and fundamental fairness despite his failure to raise them at sentencing.

Although the required evidence test is considered to be the most common standard, "it is not the exclusive standard" for determining merger of offenses. *Brooks v. State*, 284 Md. 416, 423, 397 A.2d 596, 599 (1979). The rule of lenity may compel merger even when the required evidence test does not. *Pair*, 202 Md. App. at 637, 33 A.3d at 1035. The rule of lenity is a matter of legislative intent, which applies only where at least one of the two offenses subject to the merger analysis is a statutory offense. *Id*. at 638, 33 A.3d at 1036. In *Walker v. State*, 53 Md. App. 171, 201, 452 A.2d 1234, 1250 (1982), we explained as follows:

> "[The rule of lenity] is purely a question of reading legislative intent. If the Legislature intended two crimes arising out of a single act to be punished separately, we defer to that legislated choice. If the Legislature intended but a single punishment, we defer to that legislated choice. If we are uncertain as to what the Legislature intended, we turn to the so-called 'Rule of Lenity,' by which we give the defendant the benefit of the doubt." (internal citations omitted).

Akin to other canons of statutory construction, the rule of lenity is "neither absolute nor exclusive." *Holbrook v. State*, 133 Md. App. 245, 257, 754 A.2d 1103, 1109 (2000). In *Johnson v. State*, 56 Md. App. 205, 212-16, 467 A.2d 544, 548-59 (1983), a seminal case in rule of lenity jurisprudence, we explained the common thread in cases merging sentences under the rule of lenity as follows:

> "It is the assumption (often not articulated) that under the circumstances of a given case, it is reasonable to believe that the

7

> legislature that enacted a particular statute or statutes would express some intent as to multiple punishment. That assumption is appropriate when a single act is charged as multiple offenses under a single statute (*Ladner*, *Bell* and *Prince*), where the subject of the two statutes is of necessity closely intertwined (*Loscomb* and *Fields*), where one offense is necessarily the overt act of a statutory offense (*Walker*), and where one statute, by its very nature, affects other offenses because it is designed to effect multiple punishment (*Whack*). Under those circumstances, it is not unreasonable to assume that the legislative body contemplated the possibility of multiple punishment and to conclude that unless the intention in favor of multiple punishment is clear . . . the Rule of Lenity or its equivalent should be applied against the imposition of multiple punishment."

These common characteristics notwithstanding, we do not follow any "rigid of fixed criteria" in applying the rule of lenity. *White v. State*, 318 Md. App. 740, 745, 569 A.2d 1271, 1274 (1990). Importantly, however, we do not create an ambiguity where none exists. *See Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204, 1207 (1994) (noting that the rule of lenity is an aid to resolve an ambiguity "and it may not be used to create an ambiguity where none exists").

There is no indication that the Legislature intended that the offenses at issue should merge for sentencing purposes. We start by considering the statutorily mandated penalty for each offense. Section 9-504, prohibiting the making of a false statement concerning a destructive device, provides that "[a] person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $10,000 or both." Section 3-403, prohibiting aggravated robbery, states that "[a] person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years." Nothing from the plain language of the statutes indicates that the Legislature intended that the offenses should merge for sentencing purposes. We note further that none of the common characteristics delineated by *Johnson* permeate this case.

8

We are not dealing with a single act charged as multiple offenses under the same statute; the subject of the two offenses (making a false bomb threat and the felonious taking of property of another) are not closely intertwined; we do not have a situation where one offense is necessarily the overt act of a statutory offense; and there is nothing to suggest that one statute, by its nature, affects the other statute because it is designed to effect multiple punishment. Aggravated robbery and making a false statement concerning a destructive device are distinct offenses that are intended to be punished separately.

Moreover, we reject appellant's argument that the absence of an anti-merger provision within the statutes creates implicitly an ambiguity as to multiple punishment. The absence of an anti-merger provision indicates that the Legislature did not address explicitly the topic of merger in the statutory scheme, but nothing more may be inferred from it. *See Quansah v. State*, 207 Md. App. 636, 655, 53 A.3d 492, 503 (2012) (noting that "the absence of anti-merger language . . . [does not] indicate[ ] that the Legislature intended that sentences for violating a peace order and second-degree assault should be merged"). In light of our analysis of the statutes at issue, we heed the words of Judge Charles Moylan, Jr., writing for this Court, stating that "when dealing with Maryland statutes, it is absurd to look for legislative intent or for the lack thereof in circumstances wherein there would be no occasion for the Legislature to have an intent, one way or the other. One does not look for legislative intent where there was none." *Pair*, 202 Md. App. at 641, 33 A.3d at 1037. We will not create an ambiguity where none exists and hence, we hold that appellant's convictions for aggravated robbery and making a false statement concerning a destructive device do not merge under the rule of lenity.

Appellant's last line of defense relies on the principle of fundamental fairness. It is a defense that, by itself, rarely is successful in the context of merger. *See Pair*, 202 Md.

App. at 643, 33 A.3d at 1038 (stating that "99% of [ ] merger cases have been decided by the application" of the required evidence test and the rule of lenity).  Fairness depends on the circumstances surrounding the convictions, not solely the elements of the crimes. *Carroll v. State*, 428 Md. 679, 695, 53 A.3d 1159, 1168 (2012).  It follows then that our inquiry on appeal will be fact-intensive.  *See Pair*, 202 Md. App. at 644-46, 33 A.3d at 1028 (noting that fundamental fairness doctrine is drastically different from the required evidence test and the rule of lenity because it is "heavily and intensively fact-driven").  The principal justification for rejecting a claim that fundamental fairness begs merger in a given case is that the offenses punish separate wrongdoing.  *See Carroll*, 428 Md. at 697-99, 53 A.3d at 1170-71  (noting that conspiracy to commit armed robbery and attempted armed robbery do not merge under the principles of fundamental fairness because the defendant's convictions "targeted two different crimes").  Our research has uncovered only two cases in Maryland that have required merger based solely on principles of fundamental fairness— *Monoker v. State*, 321 Md. 214, 582 A.2d 525 (1990) and *Marquardt v. State*, 164 Md. App. 95, 882 A.2d 900 (2005).  *See Bishop v. State*, 218 Md. App. 472, 507, 98 A.3d 317, 337 (2014) (noting the same).  Likewise, appellant points us to *Monoker* and *Marquardt* to support his argument for merger based on fundamental fairness.  To better determine whether appellant can seek succor under the principles espoused from either of these cases, we shall discuss them in turn.

In *Monoker*, the Court of Appeals considered whether solicitation to commit daytime housebreaking merged with conspiracy to commit daytime housebreaking.  Monoker was the victim's attorney and had been charged with and convicted of the offenses of theft and forgery.  While awaiting sentencing, Monoker asked a fellow inmate, Stanley Almony, if upon his release from incarceration he would break into the victim's home, assault her and

10

her mother and steal everything he could. Almony agreed and enlisted several other inmates to provide assistance. Monoker briefed the group on the layout of the victim's home and the location of valuables. Almony and the others were spotted and arrested before they could complete the offense. For his part in the scheme, the jury convicted Monoker of solicitation and conspiracy to commit daytime housebreaking. The court sentenced him on each charge to a term of incarceration of ten years, to be served consecutively. The Court of Appeals raised and dismissed the required evidence test and the rule of lenity as bases for merger. *Monoker*, 321 Md. at 222-23, 582 A.2d at 528-29. The Court held nonetheless that it was "unfair to uphold convictions and sentences for both crimes" because, in Monoker's case, the conspiracy to burglarize the victim's home "certainly did ripen from the solicitation of Almony to commit that same crime." *Id*. at 223, 582 A.2d at 529. The Court shed a glimmer of light on the elusive concept of fundamental fairness by noting that "the solicitation was part and parcel of the ultimate conspiracy and thereby an integral component of it." *Id*., 582 A.2d at 529. The Court concluded that it would be unfair to Monoker to "suffer twice, once for the greater crime and once for a lesser included offense of that crime." *Id*. at 224, 582 A.2d at 529.

In *Marquardt*, we considered whether a charge of malicious destruction of property merged into a charge of burglary for sentencing purposes. On the night of the incident giving rise to the charges, Marquardt was looking for his wife. He entered an apartment building in which he suspected that his wife was smoking crack cocaine with another person. Marquardt approached apartment number 17 and broke the glass of the front door. The resident encountered Marquardt and, after speaking with him, informed him that he had the wrong apartment. Marquardt proceeded to apartment number 13 where he used a baseball bat to break through the front door. He saw his wife and another man smoking

11

what appeared to be crack cocaine and a fight between Marquardt and the other man ensued. Marquardt was charged and convicted of two counts of malicious destruction of property and two counts of burglary in connection with the incidences at both apartments. The trial court sentenced Marquardt to two separate sentences for the two counts of malicious destruction of property and the two counts of burglary. On appeal, we held that the "malicious destruction of property was clearly incidental to the breaking and entering of [apartments] 13 and 17 . . . ." *Marquardt*, 164 Md. App. at 152, 882 A.2d at 934. Accordingly, we merged each count of malicious destruction of property with each count of burglary for sentencing purposes. *Id*. at 153, 882 A.2d at 934.

We find appellant's reliance on *Monoker* to be ineffectual. First, *Monoker*'s "part and parcel" language is inapplicable in the case at bar. Appellant committed separate and distinct acts to complete the aggravated robbery and making a false bomb threat charges. For example, even if appellant had not taken any property from the shoe store, he could have nonetheless been convicted of making a false bomb threat through his act of handing the store clerk a note threatening that he had a bomb in the box. Without the taking of the cash and the boots from the store, however, appellant could not have been convicted of the aggravated robbery charge. Under these circumstances, to merge the sentences on the basis that the offenses were "part and parcel" of one another, would be paramount to rewarding appellant for completing successfully the robbery. *See Bishop*, 218 Md. App. at 508, 98 A.3d at 338 (declining to merge for fundamental fairness conspiracy to commit murder with first-degree murder because the defendant committed "separate and distinct" crimes and should not be rewarded with a reduced sentence merely because he was successful in carrying out his "plan" to murder the victim). And, as we explain *infra*, each act—making a false bomb threat and the felonious taking of property of another—resulted in distinct

12

harms to multiple victims. Second, in *Monoker*, the Court created a logical fallacy when it held, on one hand, that the solicitation and conspiracy charges did not merge under the required evidence test, but later stated that merger is appropriate for fairness purposes because it would be unfair for Monoker to suffer twice, once for the greater crime and once for the lesser included offense of that crime. The *Monoker* Court used "language of double jeopardy to describe a situation which it candidly acknowledge[d] does not involve double jeopardy . . . ." *Williams v. State*, 100 Md. App. 468, 490, 641 A.2d 990, 1000 (1994). *Monoker*'s inconsistent reasoning has not gone unnoticed by this Court. In *Williams*, Judge Moylan noted that "the *Monoker* principle is by no means free of doctrinal ambiguity." *Williams*, 100 Md. App. at 489-90, 641 A.2d at 1000. It is perhaps in light of this doctrinal ambiguity that only one case, *Marquardt*, has followed *Monoker* and found merger solely on fundamental fairness grounds. *See Marquardt*, 164 Md. App. at 152, 882 A.2d at 934. In light of the circumstances present in the case at bar, we find that a rigid application of the principles delineated by *Monoker* would be inadequate for "such a fluid test dependent upon a subjective evaluation of the particular evidence." *Pair*, 202 Md. App. at 649, 33 A.3d at 1042.

*Marquardt* is also inapposite. Both offenses in *Marquardt*, malicious destruction of property and burglary, result inevitably in the destruction of property. The offenses are codified together under Title 6 of the Criminal Law Article governing "Crimes Against Property." Conversely, as explained *infra*, making a false bomb threat and aggravated robbery are wholly distinct crimes intended to punish separate harms. Unlike in *Marquardt*, the two offenses at issue are codified under separate sections of the Criminal Law Article. Making a false bomb threat is promulgated under "Crimes Against Administration" and aggravated robbery falls under "Other Crimes Against the Person." Finally, in *Marquardt*,

the Court provided little insight as to its reasoning for merging the malicious destruction charge with the burglary charge under fundamental fairness other than to state that the crimes were "clearly incidental" to one another. Accordingly, we derive little, if any, guidance from *Marquardt* to resolve the issue before this Court.

Appellant's contention that it would be inequitable to impose separate punishments for a single act or transaction is unpersuasive. There were two separate acts arising from a single criminal episode. Appellant first handed Ms. Dawson a note that represented falsely that he had a bomb. He then took the money and the boots from the store and exited the premises. Although these two acts were part of the same criminal episode, we find little difficulty in concluding that the separate acts resulting in distinct harms may be charged and punished separately. *See State v. Boozer*, 304 Md. 98, 105, 497 A.2d 1129, 1132 (1985) (noting that "separate acts resulting in separate insults to the person of the victim may be separately charged and punished even though they occur in very close proximity to each other and even though they are part of a single criminal episode or transaction").

Turning to the threshold issue, we hold that it is not unfair to uphold multiple punishments in the instant matter because making a false statement concerning a destructive device and aggravated robbery punish separate harms. Making a false statement concerning a destructive device is aimed at the transmittal of "false bomb scare *rumors* or *statements*, intending to create havoc by, for example, having buildings evacuated and police bomb squads summoned." *Moosavi v. State*, 355 Md. 651, 663-64, 736 A.2d 285, 291 (1999) (emphasis in original). Representing that one has a bomb not only creates havoc, but also likely invokes different and more extreme responses on the part of security officers. For example, in attempting to apprehend an armed robber, security officers likely would take

14

different measures when dealing with a person claiming to have a bomb than a person armed with a handgun.

Robbery with a dangerous or deadly weapon is a crime committed against a person that prohibits the taking of property of any value, by force, with a dangerous or deadly weapon. § 3-403; *West*, 312 Md. at 202, 539 A.2d at 233. The distinct nature of these offenses, and, that they are prohibited to protect distinct harms is evidenced by their codification in the Criminal Law Article. Aggravated robbery is promulgated under "Title 3," which governs "Other Crimes Against the Person." Conversely, the making of a false bomb threat charge falls under "Title 9," which prohibits "Crimes Against Public Administration." In fact, because of the financial harm that results from the havoc created by making a false bomb threat, §9-504(e) provides that the court may order the offender to pay restitution. The provision permits the court to order restitution to, *inter alia*, the State, county or a municipal corporation for the costs incurred for "responding to a location and searching for a destructive device." § 9-504(e). The offender may also be ordered to pay restitution to the "owner or tenant of a property" for "goods, services, or income lost as a result of the evacuation of the property . . . ." *Id*. That the offenses at issue were intended to punish separate harms is no more apparent then as illustrated by the circumstances in the instant matter.

The record reveals that appellant's actions caused the type of harm intended to be punished by making a false statement concerning a destructive device. Deputy Wrenn of the State Fire Marshal's Office received a call concerning a possible bomb at the shoe store. When he arrived, the entire complex had been vacated and a bomb technician had been summoned. The officer believed initially that the device could be a bomb. Only upon further inspection could he conclude that it was not a bomb. Summoning Deputy Wrenn,

15

the bomb technician and evacuating the entire complex was necessary because of the note that appellant handed to Ms. Dawson threatening that he had a bomb, not because he took money and boots from the shoe store. Because the offenses result in distinct harms—one harms a person, the other harms public administration—it is of little consequence that the aggravated robbery was perpetrated by means of making a false statement concerning a destructive device. *See Pryor v. State*, 195 Md. App. 311, 339, 6 A.3d 343, 359 (2010) (noting that first-degree assault, a crime against a person, and first-degree arson, a crime against property, did not merge under principles of fundamental fairness because while it was true that "the crime of first-degree assault was perpetrated by means of arson, each crime punishes a different harm"). It is equally unavailing, for fairness purposes, that the two offenses culminated in the commission of the robbery of the store. *See Carroll*, 428 Md. at 699, 53 A.3d at 1170 (rejecting the argument that fairness dictates merger when two offenses "culminate in the commission of the same crime").

In sum, making a false statement concerning a destructive device is a wholly distinct offense from aggravated robbery. The offenses do not merge under the required evidence test, there is no evidence of legislative intent for merger under the rule of lenity and, under these circumstances, we do not find compelling appellant's argument that fairness mandates merger. We hold that the court sentenced appellant properly to two separate terms of incarceration, one term for robbery with a deadly or dangerous weapon and another term for making a false statement concerning a destructive device.

**JUDGMENTS OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**