*Barrington Dean Watts v. State of Maryland*, No. 17, September Term, 2017. Opinion by Greene, J.

**APPELLATE PROCEDURE—PRESERVATION—RULE 4-325(e)—SUBSTANTIAL COMPLIANCE**

The Court of Appeals held that a trial court's alleged error when giving jury instructions was preserved when the party alleging the error substantially complied with Maryland Rule 4-325(e). The issue was preserved based upon substantial compliance when, as in this case, the objection is made after the instructions were given, the basis was stated, the trial judge noted the exception on the record, and then overruled the objection. A particular curative instruction did not need to be requested to preserve the issue.

**CRIMINAL LAW—SECTION 3-201(b)—STATUTORY INTERPRETATION— ASSAULT STATUTE—DEFINITION OF SECOND DEGREE ASSAULT**

The Court of Appeals held that, consistent with the decision in *Lamb v. State*, 93 Md. App. 422, 428, 613 A.2d 402, 404 (1992), *cert. denied*, 329 Md. 110, 617 A.2d 1055 (1993), the term "assault" in Section 3-201(b) of the Criminal Law Article of the Maryland Code includes the following modalities of second degree assault: battery, attempted battery, and intent to frighten.

**CRIMINAL LAW—CRIMINAL PROCEDURE—JURY INSTRUCTIONS— UNANIMITY INSTRUCTION FOR ASSAULT**

The Court of Appeals held that each particular modality of committing a second degree assault was not an independent and distinct crime, but merely a single violation of the assault statute. The Court in *Robinson v. State* determined that the legislative revisions and consolidation of the assault statute in 1996 intended to create a singular scheme for assault law in Maryland, necessarily abrogating the common law. 353 Md. 683, 701, 728 A.2d 698, 706 (1999). The legislative history of the 1996 revisions to the assault statute revealed that the Maryland General Assembly intended to replicate what it had accomplished when it revised and consolidated the theft statute. Consistent with this Court's interpretation of the theft statute in *Rice v. State*, 311 Md. 116, 126, 532 A.2d 1357, 1361 (1987), a unanimous jury instruction was not required because violations of the statute only constituted distinct modalities of one crime. Here, Petitioner was not entitled to have the trial judge instruct the jury to unanimously agree to which modality of assault Petitioner had committed.

IN THE COURT OF APPEALS

OF MARYLAND

No. 17

September Term, 2017

_____

BARRINGTON DEAN WATTS

v.

STATE OF MARYLAND

_____

Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,
Harrell, Glenn T., Jr. (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Greene, J.

_____

Filed: February 20, 2018

We are asked in this case to review the definition of second degree assault. Specifically, the question this case presents is whether the revised and consolidated assault statute, contained in Section 3-201(b) of the Criminal Law Article of the Maryland Code (2002, 2012 Repl. Vol.), contemplates different crimes, or whether the acts constitute second degree assault. Petitioner Barrington Dean Watts was convicted in the Circuit Court for Montgomery County of two counts of first degree assault. Over Petitioner's objection, the jury heard instructions on two different variations of second degree assault, battery and intent to frighten, but was not instructed to reach a unanimous decision about which iteration occurred here. Petitioner appealed his convictions to the Court of Special Appeals, which affirmed in an unreported opinion. First, we determine that the objection made by Petitioner preserved the issue of whether the jury should hear a unanimity instruction after hearing instructions for both forms of assault. We next determine that the assault statute contemplates different modalities of committing the singular crime of second degree assault as opposed to different crimes. Thus, we affirm the judgment of the Court of Special Appeals.

**I.**

Based on the evidence at trial, the jury could have found that on November 9, 2014, Petitioner, Barrington Dean Watts, entered the apartment of Lavasha Harding, pointed a gun at one of the occupants of the apartment, Andre French, and demanded money. An altercation transpired, during which Petitioner fired three shots. One bullet struck a different occupant, Antonio Woods. After a brief struggle, one of the men involved gained

possession of the gun and then detained Petitioner until the police arrived shortly thereafter.

Petitioner was charged with seven crimes,[1] including two counts of first degree assault.

Before the trial judge instructed the jury, the prosecutor and Petitioner's counsel reviewed the jury instructions with the judge. During those discussions, Petitioner's counsel objected to the State's request for instructions on accomplice liability, conspiracy, and a special instruction related to the castle doctrine.[2] Thereafter, the trial judge instructed the jury on the law, particularly as it pertained to second degree assault:

> Second degree assault. There are two ways that you can commit a second degree assault. One is, intent to frighten. Assault is intentionally frightening another person with the threat of immediate offensive physical contact or physical harm. In order to convict the defendant of assault, the State must prove, number one, that the defendant committed an act with the intent to place Andre French and/or Antonio Woods in fear of immediate offensive physical contact or physical harm. That the defendant had the apparent ability at that time to bring about the offensive physical contact or physical harm. And three, that Andre French and/or Antonio Woods reasonably feared immediate offensive physical contact or physical harm and that the defendant's actions were not legally justified.
>
> Battery. Assault is also causing offensive physical contact to another person. In order to convict the defendant of assault under [a] battery theory, the State must prove that the defendant caused offensive physical contact or physical harm to Andre French and/or Antonio Woods. That the contact [was] the result of an intentional or reckless act of the defendant and was not

---

[1] Petitioner was indicted by the Grand Jury of Montgomery County of the following: 1) First degree assault; 2) First degree assault; 3) Robbery with a dangerous weapon; 4) Use of a firearm in the commission of a crime; 5) Conspiracy to commit first degree assault; 6) Conspiracy to commit robbery with a dangerous weapon; and 7) Conspiracy to use of a firearm in the commission of a crime.

[2] The castle doctrine, not at issue before us now, is an affirmative defense that, under particular circumstances, permits force against intruders entering one's home. *See Burch v. State*, 346 Md. 253, 283–84, 696 A.2d 443, 458 (1997) (citing *Crawford v. State*, 231 Md. 354, 361, 190 A.2d 538, 541 (1963)).

accidental. And three, that the contact was not consented to by Andre French and/or Antonio Woods.[3]

At the conclusion of the reading of the jury instructions, the judge called the attorneys to the bench and asked if they took "any exception to the court." The prosecutor took no exceptions. Petitioner's attorney renewed the previous objections as well as noted a new exception to the assault instruction, and the following exchange occurred:

> [DEFENSE COUNSEL]: The defense would now like to reiterate our previous objections and object to the alternative instruction on assault and that it's possible that six jurors could go with one theory, six could go with another, and there would not be a unanimous verdict for him.
>
> THE COURT: Six could go with one and six could go with the other?
>
> [DEFENSE COUNSEL]: Or some other division of jurors.
>
> THE COURT: Okay. All right. Thank you.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.
>
> THE COURT: Exceptions noted.

After deliberations, the jury found Petitioner guilty of two counts of first degree assault as well as the remaining counts against him.

Petitioner appealed his conviction and sentence to the Court of Special Appeals. In an unreported opinion, the Court of Special Appeals affirmed the Circuit Court. We

---

[3] Of course, in addition to intentionally frightening and battery, there is a third modality of committing an assault. An assault may be committed in the form of an attempted battery. *See Lamb v. State*, 93 Md. App. 422, 428, 613 A.2d 402, 404 (1992) *cert. denied*, 329 Md. 110, 617 A.2d 1055 (1993).

3

granted *certiorari* on the following question, slightly rephrased from the question submitted to this Court:

> Are intent to frighten and battery separate assault crimes, thus requiring individualized jury unanimity?[4]

*Watts v. State*, 453 Md. 358, 162 A.3d 838 (2017). Additionally, the State filed a conditional cross-petition, presenting us with the following question:

> Is Watts's claim of error unpreserved where Watts did not ask for the unanimity instruction he now claims was mandatory?

*Id.* Because we determine that the jury instruction issue was preserved, we reach the substance of the assault issue.

## II.

The threshold issue we must address is whether Petitioner has preserved for our review the alleged jury instruction error. The State contends that Petitioner's claim of error with the jury instructions issued by the trial judge was not raised at trial. The State points to the record as evidence that Petitioner never requested a curative instruction.

Petitioner submits that his counsel's discussion during the bench conference was sufficient to preserve an objection to the alleged error. After the trial judge had instructed the jury, Petitioner's counsel explained at a bench conference that the jury could possibly split its decision with regard to the assault crime, with half of the jury believing that

---

[4] The question posed to us in the petition for certiorari was the following:
> Are intent to frighten and battery merely varieties of a single crime under Maryland's assault statute or are they separate crimes, thus requiring individualized jury unanimity?

4

Petitioner had committed a battery and the other half believing Petitioner had intentionally frightened the occupants. Thus, there would be a lack of jury unanimity.

Maryland Rule 4-325(e) governs the preservation of error in jury instructions and states, in pertinent part, the following:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.

We have explained that the purpose of Rule 4-325(e) is "to give the trial court an opportunity to correct its charge if it deems correction necessary." *Gore v. State*, 309 Md. 203, 209, 522 A.2d 1338, 1340 (1987) (citing *Bennett v. State*, 230 Md. 562, 568, 188 A.2d 142, 144 (1963)). This Court in *Gore* explicated the requirements for preserving an alleged jury instruction error: "[T]here must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless." *Id.*

This Court has consistently repeated that the failure to object to an instructional error prevents a party on appeal from raising the issue under Rule 4-325(e). *See, e.g., Grandison v. State*, 425 Md. 34, 70–71, 38 A.3d 352, 373–74 (2012) ("Grandison's failure to raise his objection to the jury instruction in a timely fashion, combined with his failure to even address the waiver argument before this Court, persuades us to affirm the dismissal of his motion on this question."); *Savoy v. State*, 420 Md. 232, 243, 22 A.3d 845, 852

5

(2011) ("Petitioner was required, but failed, to make a timely objection to the instruction. He therefore has no right to automatic appellate review of it."); *Miller v. State*, 380 Md. 1, 29, 843 A.2d 803, 820 (2004) ("The simple answer is that, as Miller made no objection to the instruction, he has waived his right to complain about it."); *State v. Rose*, 345 Md. 238, 245, 691 A.2d 1314, 1317 (1997) ("The general rule is that the failure to object to a jury instruction at trial results in a waiver of any defects in the instruction, and normally precludes further review of any claim of error relating to the instruction."); *Bowman v. State*, 337 Md. 65, 67–68, 650 A.2d 954, 955 (1994) ("[A]ppellate review of a jury instruction will not ordinarily be permitted unless the appellant has objected seasonably so as to allow the trial judge an opportunity to correct the deficiency before the jury retires to deliberate. . . . These principles are embodied in Maryland Rule 4-325(e)[.]") (citing *State v. Hutchinson*, 287 Md. 198, 202, 411 A.2d 1035, 1037 (1980)); *Sims v. State*, 319 Md. 540, 549, 573 A.2d 1317, 1321 (1990) ("Unless the attorney preserves the point by proper objection after the charge, or has somehow made it crystal clear that there is an ongoing objection to the failure of the court to give the requested instruction, the objection may be lost.").

Although strict compliance (based upon the record developed at trial) is preferred, an objection that falls short of that mark may survive nonetheless if it substantially complies with Rule 4-325(e). *See Bennett v. State*, 230 Md. 562, 569, 188 A.2d 142, 145 (1963). For example, an attorney failed to preserve an objection when the record contained only a vague comment that was devoid of a basis for his objection. *Bowman*, 337 Md. at 68, 650 A.2d at 956 (holding that an attorney failed to preserve an error on appeal when

6

the attorney stated "even though you touched upon it, you really didn't go into a more specific kind of imperfect defense of others. But that's my only comment. I think it was a little sketchy, even though you incorporated some of it, but it wasn't exactly what I had in mind"). This Court reasoned that the jury instruction issue was not preserved because "[t]he remarks . . . did not constitute an objection to the instruction; he did not offer to the court a definite statement of the ground for his objection; the reasons for his dissatisfaction were not apparent from the record; and it certainly cannot be said that further objection would have been futile or useless." *Id.* at 69, 650 A.2d at 956. Likewise, when the basis of the objection in the trial court differed from the issue raised on appeal, this Court has determined that the issue was not preserved for review. *State v. Smullen*, 380 Md. 233, 276, 844 A.2d 429, 454 (2004) ("[Counsel] never claimed that the instruction was, itself, erroneous. On appeal, the claim was made that the instruction was substantively erroneous . . . . [T]he issue raised on appeal had not been presented to the trial court and had therefore not been preserved for review.").

Although this Court may readily determine in most cases that an issue is not properly preserved for appellate review, we have also acknowledged that there is "some play in the joints" in determining whether an issue has been preserved. *Sergeant Co. v. Pickett*, 283 Md. 284, 289, 388 A.2d 543, 547 (1978). If the record reflects that the trial court understands the objection and, upon understanding the objection, rejects it, this Court will deem the issue preserved for appellate review. *Id.* at 290, 388 A.2d at 547. Instructions offered to the trial court, in writing, are preserved if the record demonstrates the trial court considered the requested instructions. *Bennett*, 230 Md. at 568, 188 A.2d at 145.

7

Additionally, if the trial court recognizes that an effective objection has been made, the issue has been preserved for appellate review. *Id.* at 569, 188 A.2d at 145 ("[I]t appears that the trial court . . . not only believed but subsequently recognized that the defendant had made an effective objection."). In theory, if neither strict nor substantial compliance is found, the last refuge an appellant may seek is to ask for plain error review. *See Newton v. State*, 455 Md. 341, 364, 168 A.3d 1, 14 (2017).

In the case *sub judice*, the alleged jury instruction error has been preserved based upon the record before us. During the bench conference after the delivery of jury instructions, Petitioner's counsel engaged in a brief back-and-forth with the trial judge at which time Petitioner's counsel renewed an earlier objection and noted a new objection, stating as the basis that the jury might not have a unanimous verdict for assault because "six jurors could go with one theory, six could go with another." If the trial judge lacked clarity about counsel's objection, the record does not reflect it. As a matter of course, the trial judge noted the exception on the record. Consistent with both *Sergeant Co.* and *Bennett*, this Court holds that the assault jury instruction issue was properly preserved for appellate review. That Petitioner's counsel did not request a specific unanimous jury instruction on the assault charges[5] at the time of the objection does not foreclose preservation of the alleged error. The Maryland Rules do not require that a party request a

---

[5] To be sure, the trial judge gave the general instruction to the jury regarding coming to a unanimous verdict. The State's position would require us to accept that an additional instruction be requested in order for the objection to the jury instruction error to be preserved.

8

curative jury instruction, and we decline at this time the State's invitation to impose such a requirement to preserve the issue of error.

## III.

We turn now to the substance of the issue raised by Petitioner: whether battery and intent to frighten are different crimes, or whether they are simply different modalities of carrying out second degree assault. Petitioner contends that the trial court erred when it failed to instruct the jury that it must unanimously agree to the means of committing second degree assault. Petitioner urges this Court to conclude that assault and battery are distinct and separate crimes, and therefore the jury instruction should have required a unanimous consensus as to whether the defendant committed assault by battery or intent to frighten. Petitioner primarily relies on *Ford v. State*, 330 Md. 682, 625 A.2d 984 (1993), for his proposition.

Our inquiry begins with the definition of second degree assault, as defined by Section 3-201(b) of the Criminal Law Article of the Maryland Code (2002, 2012 Repl. Vol.) ("assault statute"), which provides:

> "Assault" means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings.

(quotation marks in original). The General Assembly codified the modern-day assault statute in 1996 by repealing former Article 27 §§ 12 and 12A, and re-enacting the consolidated § 12, which provided, in pertinent part:

> Except as otherwise provided in this subheading, "assault" means the offenses of assault, battery, and assault and battery, which terms retain their judicially determined meanings.

9

Art. 27, § 12(b). The General Assembly codified this language in Chapter 632 of the 1996 Laws of Maryland. In 2002, Art. 27 § 12(b) was repealed and re-enacted without substantive change in § 3-201(b) of the Criminal Law Article.

*A.*

Keeping this legislative history in mind, and recognizing that the plain language of the statute does not resolve whether intent to frighten and battery are separate assault crimes, we rely on the tools of statutory construction to glean the meaning of second degree assault. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. . . . [W]e look first to the language of the statute, giving it its natural and ordinary meaning[.]" *Scriber v. State*, 437 Md. 399, 410, 86 A.3d 1260, 1266 (2014) (quoting *Stoddard v. State*, 395 Md. 653, 661, 911 A.2d 1245, 1249 (2006)). We read "the meaning and effect [of the words in the statute] in light of the setting, the objectives and purposes of the enactment under consideration." *Stoddard v. State*, 395 Md. 653, 662, 911 A.2d 1245, 1250 (2006) (quoting *Fraternal Order of Police v. Mehrling*, 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996)). "If the statutory language is ambiguous or unclear, we look to legislative history, prior case law, and statutory purpose." *Comptroller of Treasury v. Phillips*, 384 Md. 583, 591, 865 A.2d 590, 594 (2005) (citing *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484, 487 (2004)). We are to "us[e] all the resources and tools of statutory construction at our disposal" including "the structure of the statute," the "derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process," and "the general purpose behind the statute." *Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc.*, _ Md. _ (2017).

10

Section 3-201(b) of the Criminal Law Article plainly states that the words "assault" and "battery" "retain their judicially determined meanings." The Floor Report for House Bill 749 ("H.B. 749"), as well as the Bill Analysis for H.B. 749, explained that,

> the Committee to Revise Article 27 felt that there were several areas that needed to be addressed. First, the terms "assault" and "battery" were subject to various interpretations. See, e.g., Lamb v. State, 93 Md. App. 422, 613 A.2d 402 (1992) (a fifty-four page discussion on the various meanings of these terms). Although House Bill 749 retains the common law meaning of these terms, it is clear under the bill that the term "assault" includes all aspects of the law on assault and battery.

Indeed, Senate Bill 618 ("S.B. 618"), the counter-part to H.B. 749, included as annotations to the statute certain "Committee Notes." Specifically, the annotation to Art. 27, § 12 of S.B. 618 provided, in full:

> COMMITTEE NOTE (COMMITTEE TO REVISE ARTICLE 27): Similar to the revision of the burglary laws, the Committee has chosen to retain the judicially determined meanings of the terms "assault", "battery", and "assault and battery". The meaning of these terms has been extensively developed at common law and case law. See e.g., Lamb v. State, 93 Md. App. 422 (1992). Also, as with the burglary revision, the Committee does not intend to "freeze" the meanings of these terms, but expects that they will continue to be clarified when appropriate in future case law.

H.B. 749, identical to S.B. 618, included the same Committee Note from the Committee to Revise Article 27, and this Committee Note was included as part of Chapter 632 of the 1996 Laws of Maryland. The inclusion of the Committee Note as part of the final House Bill that was enacted as Chapter 632 reflects the General Assembly's intention to draw a parallel between the assault statute and the burglary statute as well as its intention to rely on case law to clarify the meaning of second degree assault. Based upon our interpretation of the legislative material supporting the enactment of the assault statute in

11

Chapter 632, this Court is persuaded that the General Assembly intended to codify a singular crime, second degree assault, which may be committed through different modalities. The current language of Crim. Law Art., § 3-201(b) substantively mirrors the language of the revised and consolidated Art. 27, § 12(b).

Significantly, the comparison to the theft law informs the Court's outcome here. In *Rice v. State*, we determined that the consolidated theft statute did not require a jury instruction regarding unanimity. 311 Md. 116, 126, 532 A.2d 1357, 1361 (1987). The State charged Mr. Rice with various counts of theft, burglary, armed robbery, and related offenses in connection with a home invasion. *Id.* at 119–20, 532 A.2d at 1359. With respect to the jury instructions regarding theft, the trial judge did not require that the jury reach a unanimous consensus on how Mr. Rice violated the theft statute, but instead announced "in order for you to find the Defendant guilty, all of you must find that the Defendant violated Subsection A or Subsection C or both[.]" *Id.* at 121, 532 A.2d at 1359. The jury convicted Mr. Rice of multiple crimes, including theft, burglary and armed robbery. *Id.* at 120, 532 A.2d at 1359. Mr. Rice appealed and contended that the trial judge errantly instructed the jury with regard to the theft count because "[t]his error . . . created the possibility that . . . six jurors [could have] believed [Mr.] Rice violat[ed] subsection (a) [stealing property] . . . . [and] [t]he other six jurors [could have] believed the opposite . . . [that] Rice [was] guilty of possessing stolen property but not of taking it himself from the [residents]." *Id.* at 122, 532 A.2d at 1360. In so arguing, Mr. Rice advanced the position that each subsection of the theft statute contained different crimes and that jury unanimity was, therefore, required. *Id.* at 123, 532 A.2d at 1360.

12

In order to determine the validity of Mr. Rice's arguments, we first turned to the language of the theft statute and then its legislative history. *Rice*, 311 Md. at 124, 532 A.2d at 1361. We observed that "[n]othing in the language of the theft statute or its legislative history suggests that [the statute] encompasses multiple crimes for jury instruction purposes." *Id.* In doing so, we considered that a report from the Joint Subcommittee on Theft Related Offenses reflected the General Assembly's intent to consolidate previously different crimes into "a single offense." *Id.* From there, the Court declared, "It appears to us the requirement of jury unanimity that [Rice] advocates would place substantial obstacles in . . . manifest contravention of the intent of the legislature." *Id.* at 125, 532 A.2d at 1361. A legislative report from the Joint Subcommittee bolstered our conclusion:

> By merging the acts of receiving stolen goods and the acts constituting the actual stealing into a single offense (i.e., theft) some confusion has been eliminated. . . . In some instances, courts were confounded by the dilemma of which inference to draw [as to whether a criminal defendant had stolen goods or had received stolen goods]. However, now that the act of stealing and the act of receiving constitute a single offense (i.e., theft), the confusion is eliminated.

*Id.* After an extensive review of the legislative history of the consolidation of crimes in the theft statute, we held that "[stealing and receiving stolen goods] are not autonomous offenses but rather one crime defined two ways" and therefore "Maryland's theft statute [does] not require the jury unanimity that [Rice] seeks." *Id.* at 126, 136, 532 A.2d at 1361, 1367.

*Rice* informs our answer to the question before us. As we previously noted, the General Assembly intended for the changes to the assault statute to be in lock-step with the changes to the theft statute. Like the theft statute, nothing in the plain language of Crim.

13

Law Art., § 3-201(b) describes battery, attempted battery, or intent to frighten as separate crimes. Similar to the revisions made to the theft statute, and its common law burglary counterpart, the General Assembly sought to simplify and consolidate the law of assault. Consistent with our interpretation of the theft statute in *Rice*, here the assault statute refers to a single crime, second degree assault, derived from what had previously been defined as "battery," "assault," and "assault and battery" in the common law. In 1996, the General Assembly simply codified what the Court of Special Appeals in *Lamb* had already recognized—that second degree assault is a single crime that could be committed via different modalities. *See Lamb v. State*, 93 Md. App. 422, 613 A.2d 402 (1992) *cert. denied*, 329 Md. 110, 617 A.2d 1055 (1993) ("The word 'assault' embraces not only attempted batteries but also actual batteries, as well as the combination of the two.").

Further exploration of the legislative history of the assault statute confirms that second degree assault is a single offense that may be committed by various means. The Floor Report for House Bill 749 detailed the purpose of the General Assembly. After referencing the decision in *Lamb*, the Floor Report reflected the desire of the General Assembly to consolidate all of the law of assault into the term "assault" when it stated, "Although House Bill 749 retains the common law meanings of these terms, it is clear under the bill that *the term 'assault' includes all aspects of the law on assault and battery*." *Id.* (emphasis added).

Both the House and Senate bill history demonstrate the General Assembly's reliance on *Lamb v. State*, a landmark case decided by the Court of Special Appeals, when crafting

14

the revised assault statute that led to the re-enactment of Art. 27, § 12(b).[6] Mr. Lamb had been convicted and sentenced for both assault and battery, among other crimes, and argued on appeal that assault constituted a lesser included offense of battery and should have merged with his battery conviction. *Id.* at 426, 613 A.2d at 404. The Court of Special Appeals affirmed the trial court and rejected Mr. Lamb's contention regarding his assault conviction merging with his battery conviction. The Court of Special Appeals held that an assault includes each of the following:

1. A consummated battery or the combination of a consummated battery and its antecedent assault;
2. An attempted battery; and
3. A placing of a victim in reasonable apprehension of an imminent battery.

*Id.* at 428, 613 A.2d at 404. In *Lamb*, Judge Moylan explained carefully that "assault" continued to refer to "attempted battery," as it traditionally had, but "assault" did not exclusively refer to attempted battery because of the gradual influence of tort law concepts on the development of Maryland's criminal common law. *Id.* at 435–36, 613 A.2d at 408. Judge Moylan scrupulously recounted case law over the course of nearly two hundred years and concluded that the crime of assault also "mirrors the tort [of assault] precisely in terms of its character and its necessary elements. . . . The critical state of mind on the part of the victim is to be placed 'in reasonable apprehension' of an impending battery." *Id.* at 437–

---

[6] The work of the Honorable Charles E. Moylan, Jr., in *Lamb* has been recognized as instructive for its detailed history of the crimes of assault and battery. *See Snyder v. State*, 210 Md. App. 370, 380, 63 A.2d 128, 134 (2013) ("For a full and more thorough scholarly explanation of the crimes of assault and attempt, as well as the relationship between the tort concept of assault and the criminal assault, *see Lamb*[.]").

15

38, 613 A.2d at 409.  In short, "assault" had come to mean both the crime of the "attempted battery" variety as well as the "intent to frighten" variety.  *Id.*

After detailing the history of the development of the meaning of "assault," Judge Moylan expressly addressed that both statutory and case law have, at times, used "assault" and "battery" interchangeably, or as the phrase "assault and battery."  *Id.* at 428, 613 A.2d at 404–05.  When "assault" was used to refer to the crime of battery, "assault" meant "a consummated battery alone."  *Id.*  Therefore, the term "assault" encapsulated the common law crimes of attempted battery, a consummated battery, and intent to frighten.  *Id.*[7]

Although the decision in *Lamb* came before the 1996 revisions to the assault statute, this Court has had subsequent opportunity to interpret Art. 27, § 12.

### B.

Three years after the enactment of the revised and consolidated Art. 27, § 12, this Court had occasion to consider whether the assault statute repealed the common law crimes of assault and battery.  We answered in the affirmative.  *Robinson v. State*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999) ("We have determined [] that the [1996 assault statutes] as adopted represent the entire subject matter of the law of assault and battery in Maryland,

---

[7] Petitioner contends that because a battery, an attempted battery, and intent to frighten are distinct acts, each must constitute a distinct crime.  As we held with regard to theft in *Rice v. State*, Maryland's consolidated assault statute "constitutes a single crime; and . . . the [modalities] merely specify different acts or transactions through which [the single crime] can be proved."  311 Md. 116, 124, 532 A.2d 1357, 1361 (1987) (citing *Jones v. State*, 303 Md. 323, 338, 493 A.2d 1062, 1069–70 (1985).  And, following the reasoning in *Rice*, where we explained that "either inference, whether of larceny or of possessing stolen goods, would lead to the conclusion that the defendant was guilty of theft[,]" we agree that, here, an inference of battery, assault, *or* intent to frighten would lead to the conclusion that the defendant was guilty of assault.  *See id.* at 125–26, 532 A.2d at 1361.

16

and as such, abrogate the common law on the subject."). Reviewing the history of the

consolidation and revision of the assault statute, the Court deduced the following:

> By subsuming and combining all statutory offenses of assault then existent as well as all common law forms of assault and battery into a single and comprehensive statutory scheme, the 1996 assault statutes represent the entire subject matter of assault crimes. We therefore conclude that the new assault statutes, effective October 1, 1996, abrogated the common law offenses of assault and battery.

*Id.* at 696, 728 A.2d at 703–04. Noteworthy is a brief discussion of a revision to Section

9-106 of the Courts and Judicial Proceedings Article of the Maryland Code, which was

also amended in 1996. That statute dealt "with the admission of testimony from a spouse

of a person charged with a crime." *Id*. at 697, 728 A.2d at 705. This Court acknowledged

that the Committee to Revise Article 27 had appended a statement about assault to the

amended Cts. and Jud. Proc. Art., § 9-106. The Committee Note provided:

> The revision of the assault laws *replaces the common law crime of assault and battery* with the statutory crimes of assault in the first or second degree.

*Id.* at 697, 728 A.2d at 705 (emphasis in original).[8]

This Court then compared the legislative action in revising and consolidating the

assault statute to what the General Assembly did in revising and consolidating the statutory

crimes of theft and escape. *Id.* at 699–700, 728 A.2d at 705–06; *see West v. State*, 312 Md.

---

[8] The *Robinson* Court noted its "cognizan[ce] that 'the Committee Notes and catchlines contained in this Act are not law,' we nonetheless find this statement persuasive evidence of the legislative intent to abrogate common law assault and battery." *Robinson v. State*, 353 Md. 683, 697–98, 728 A.2d 698, 705 (1999) (internal citations omitted). Likewise, when we review for the legislative purpose of the revisions with regard to answering the question before us now, we find the Notes accompanying the statutory revisions persuasive in developing our understanding of the General Assembly's intent. *Id.*

197, 539 A.2d 231 (1988) (holding that the theft statute revisions and consolidation abrogated the common law crime of larceny); *see also Watkins v. State*, 42 Md. App. 349, 400 A.2d 464 (1979) (holding that the escape statute revisions and consolidation abrogated the common law crime of escape). That comparison led the Court to the unmistakable conclusion that the "adoption of the assault statutes abrogated the common law crimes of assault and battery[.]"[9] *Robinson*, 353 Md. at 701, 728 A.2d at 706. As we acknowledged in *Nicolas v. State*, the abrogation of the common law as held in *Robinson* remained good law. 426 Md. 385, 403, 44 A.3d 396, 406 n.4 (2012); *see also Christian v. State*, 405 Md. 306, 319–20, 951 A.2d 832, 839–40 (2008).

Both the Court of Special Appeals' holding in *Lamb* and this Court's holding in *Robinson* undermine Petitioner's claim here. *Lamb* held that the common law term "assault" referenced three distinct acts: battery, attempted battery, and intent to frighten. 93 Md. App. at 428, 613 A.2d at 404–05. The holding in *Robinson*, interpreting the 1996

---

[9] Petitioner relies upon multiple cases in advancing his contention that assault and battery consist of distinct crimes. Petitioner cites to *Woods v. State*, 14 Md. App. 627, 288 A.2d 215 (1972), *State v. Duckett*, 306 Md. 503, 510 A.2d 253 (1986), *Snowden v. State*, 321 Md. 612, 583 A.2d 1056 (1991), and *Wieland v. State*, 101 Md. App. 1, 643 A.2d 446 (1994), all of which predate the legislative revisions and consolidation of the assault statute and therefore do not account for the import of those changes. *See Robinson v. State*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999). Petitioner refers to *Nicolas v. State*, a case undercutting the very argument Petitioner advances. 426 Md. 385, 403, 44 A.3d 395, 406–07 (2012) (describing battery as one variety of assault). Lastly, Petitioner uses *Pryor v. State*, which also contravenes his argument. 195 Md. App. 311, 335, 6 A.3d 343, 357 (2010) (explaining "[t]here are three forms of assault: the intent to frighten, an attempted battery, and a battery") (citing *Christian v. State*, 405 Md. 306, 316–22, 951 A.2d 832, 838–41 (2008)). The mere fact that Petitioner supplies cases drawing a distinction between assault and battery in no way undermines our holding, nor does it fully grasp the implications of the 1996 revisions to the assault statute discussed in *Robinson*.

revisions and consolidation of the assault statutes into Art. 27 § 12(b), reflected that

principle: that what had previously existed in the common law was, and is presently,

reflected in the singular scheme of the assault statute. 353 Md. at 697, 728 A.2d at 705.

Therefore, regardless of the particular modality, be it battery, attempted battery, or intent

to frighten, each were considered "assaults" at common law according to *Lamb* and each,

after 1996, were considered second degree assault according to *Robinson*.[10]

C.

Given the legislative history of § 3-201(b), the parallel purposes of the General

Assembly in revising the theft and assault statutes, as well as the seminal cases of *Lamb*

and *Robinson,* we are compelled to conclude that the various modalities of assault, battery,

and intent to frighten each constitute second degree assault. Thus, with respect to the

question of whether the jury instruction required unanimity on the assault charges, we

---

[10] Petitioner provides to this Court, as persuasive authority, *State v. Weldy*, a case in which Montana's Supreme Court interpreted Montana's assault statute as contemplating different crimes. 902 P.2d 1, 6 (Mont. 1995). Petitioner commits the very error of which the Montana court warned in that case. The Montana Supreme Court cited *Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991), a case in which the United States Supreme Court held that different elements enumerated within a single statute did not necessarily result in the legislature establishing multiple crimes. *Id.* ("[T]he United States Supreme Court held that it is erroneous to assume that statutory alternatives are *ipso facto* independent elements defining independent crimes under state law. 'In point of fact . . . legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements of separate crimes[.]'") (citing *Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991)). The Montana Supreme Court recognized that interpreting criminal statutes requires more than generalizing, and therefore we do not find Montana Supreme Court's interpretation of the Montana assault statute persuasive in interpreting our own assault statute, in light of our distinctive common law and the assault statute's history.

19

answer in the negative. The reasoning in *Rice* applies with equal force to the facts of this case, and we will not depart from the conclusion that when a statute has outlined different means of violating a single crime, jury unanimity on the modality of the violation is unnecessary on which particular modality occurred. *See Rice*, 311 Md. at 126, 532 A.2d at 1361. Because battery, attempted battery, and intent to frighten all constitute second degree assault, the trial judge did not err when he did not provide a specific unanimity instruction.

Rather than utilizing *Lamb* or *Robinson* to advance his argument, Petitioner instead turns to *Ford v. State*, 330 Md. 682, 625 A.2d 984 (1993). Petitioner's reliance on *Ford v. State*, a case decided after *Lamb* but prior to the 1996 assault statute revisions, is unavailing. *Ford* merely reiterates the common law approach to assault and battery insofar as the term "assault and battery" may act as a catch-all at times by referring to either an "assault" or "battery." *Id.* at 700, 625 A.2d at 992. Petitioner seizes upon one line in *Ford* where the Court stated that "[a]ssault and battery are two closely related but distinct crimes." *Id.* at 699, 625 A.2d at 992. In the same breath, we noted the complexity of the history of assault and battery in that "[they] constitute a generally recognized common law exception to the rule against duplicitous charges" in that "[t]hey are often charged in one count" as part of a "practice [that] is long-standing." *Id.* at 700, 625 A.2d at 992. To whatever extent the single statement in *Ford* upon which Petitioner focuses represented the entire history of Maryland common law on assault and battery, it no longer did so after consolidation of the law of assault and battery under Art. 27 § 12 assault statute. *See Robinson*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999) ("[T]he language of the 1996 assault statutes contain no

20

specific words of repeal or abrogation . . . .  We have determined, however, that the statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject.").

## IV.

In conclusion, we hold that when a defendant is charged with assault, a jury need not agree unanimously as to the means of the violation.  So long as the jury unanimously agrees that the defendant has committed a modality of assault, the jury need not agree as to how the assault was committed.  By definition, under Maryland common law, battery, attempted battery, and intent to frighten each constitute second degree assault.  Therefore, a trial judge need not instruct the jury to unanimously agree to the particular modality of second degree assault committed by a defendant.  Here, Petitioner was not entitled to such an instruction.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**

21