*Joshua Isaiah Jones v. State of Maryland*, No. 1942, September Term 2017, Opinion by Shaw Geter, J.

**CRIMINAL LAW – SEX-TRAFFICKING – SUFFICIENCY OF THE EVIDENCE – SENTENCING – MERGER**

The statutory language of C.L. § 11-303(a)(1)(i)–(iii), (b)(1) and C.L. § 11-304 reflects a clear intent on the part of the Legislature to provide for separate punishments for a conviction of human trafficking and receiving the earnings of a prostitute. There is neither ambiguity nor conflict between the statutes sufficient to invoke the rule of lenity, therefore, a conviction for receiving the earnings of a prostitute does not merge into human trafficking for sentencing purposes.

Circuit Court for Prince George's County
Case No.: CT16-0883C

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1942

September Term, 2017

_____

JOSHUA ISAIAH JONES

v.

STATE OF MARYLAND

_____

Leahy,
Shaw Geter,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

    JJ.

_____

Opinion by Shaw Geter, J.

_____

Filed: January 4, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant, Joshua Isaiah Jones, was convicted by a jury in the Circuit Court for Prince George's County of three counts of human trafficking of a minor and one count of receiving the earnings of a prostitute. He was acquitted of conspiracy to engage in human trafficking. The court sentenced appellant to twenty-five years' imprisonment, with all but seven years suspended for one count of human trafficking; a consecutive ten-year suspended sentence for receiving the earnings of a prostitute; and five years' supervised probation. The remaining human trafficking convictions merged for purposes of sentencing.

Appellant presents the following questions for our review, which we have reordered and rephrased slightly:

1. Did the circuit court abuse its discretion by providing a supplemental jury instruction rather than referring the jury to the written pattern jury instructions already given?

2. Was there insufficient evidence to convict appellant of human trafficking of a minor and receiving the earnings of a prostitute?

3. Did the circuit court err in ordering separate sentences for receiving the earnings of a prostitute and human trafficking of a minor?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

**BACKGROUND**

On May 4, 2015, Prince George's County Police Detective Antonio Hill searched the website Backpage[1] in his capacity as an undercover detective and retrieved an

---

[1] The State introduced testimony from an expert in human trafficking who explained that Backpage was the "number one" website for advertisement of prostitution.

advertisement that included photographs of a woman's face and body, and a caption that read, in part: "Hello get a taste of Kandy… Out & Incalls."  Suspecting that the advertisement was for prostitution, the detective called the number provided and, posing as a prospective client, arranged to meet "Kandy" for a "date."  Detective Hill proceeded to the Comfort Inn in College Park accompanied by a team of officers and, when he arrived, Kandy advised him to come to Room 216.  The detective entered the hotel room and after a brief negotiation, handed Kandy $200 in exchange for sexual acts.  Under the pretext of using the bathroom, the detective opened the door for the arresting officers.

 Kandy reported that she was a juvenile named "R.D."[2] and officers from the Maryland Child Exploitation Task Force took the lead in the investigation.  The police obtained a copy of the room rental agreement from hotel staff, which indicated that appellant had checked in that day and had reserved the room for one night.  The police convened in the parking lot to wait for appellant, and when he arrived, he was apprehended.

He was charged by indictment with conspiracy to commit human trafficking, three counts of human trafficking of a minor, and receiving the earnings of a prostitute.  At trial, the State alleged that appellant, acting as either a co-conspirator or an accomplice, coordinated with Rashid Mosby and Terra Perry to recruit R.D. to engage in prostitution.

---

[2]  We shall refer to the victim as "R.D." to protect her privacy. *See Muthukumarana v. Montgomery County*, 370 Md. 447, 458 n.2 (2002); *Thomas v. State*, 429 Md. 246, 252 n. 4 (2012).

2

R.D., a witness for the State, testified that she was seventeen years old and homeless when she saw an advertisement on social media promising that she could earn $30,000. After corresponding with two or three individuals for several weeks, she was emailed an electronic train ticket to transport her from North Carolina to Washington, D.C. On April 30, 2015, Mosby met R.D. at Union Station, and during the drive to Maryland, he informed her that she was expected "to have sex and give him all the money." Mosby then placed R.D. in a hotel room with a woman who was working as a prostitute. A conflict arose between Mosby and R.D. because she did not accept any "dates" and, on May 2, 2015, after an argument with another woman, she was kicked out of the hotel. Mosby told R.D. to leave with appellant, who then drove her to Target and his house. R.D. testified that she knew appellant by the alias "Caddy" and that she had previously seen him speaking with Mosby at the hotel.

According to R.D., she was in appellant's one-bedroom apartment for two days. While she was at his house, appellant took her to two "outcalls" and she gave him $200 she received in exchange for intercourse. R.D. testified that she told appellant several times that she wanted to go home, and his response was that she owed him money. On May 4, 2016, appellant drove R.D. to the Comfort Inn and reserved her room, where she was discovered by police.

The State introduced data extracted from R.D.'s mobile phone using "Cellbrite" technology, including call logs, chat messages, emails, and contact information. A Cellbrite extraction report generated on May 4, 2015, reflected several telephone calls

3

between appellant and R.D. on May 3, 2015 and May 4, 2015. The police also retrieved a message that stated: "If you want to go to Washington, he will bring you there. Okay. Text him now and tell him Caddy told you to call. Okay." Within her contacts, the police identified a telephone number for Mosby that was assigned the contact name "BOSS," while appellant's telephone number was assigned the contact name "BO$$."

Photographs from the exterior of the hotel were also introduced into evidence, which showed that a vehicle that resembled appellant's Hyundai was in the parking lot when Mosby kicked R.D. out of the hotel. The State also introduced testimony from Amelia Rubenstein, an expert in human trafficking, who explained that "debt bondage" occurs when a human trafficking victim is told that they have a debt and the trafficker forces the victim to work it off. Ms. Rubenstein testified that the debt is usually incurred traveling somewhere, and the victim is never able to repay the debt.

Appellant, testifying in his defense, acknowledged that he had routinely solicited prostitutes before and claimed that he first encountered R.D. after he contacted the telephone number on her Backpage advertisement and arranged to meet her at a hotel. He said that he purchased a soda and a "Black and Mild" cigar for her, and then left the hotel. He returned, however, when R.D. contacted him and said that an incident had occurred with her companions. Appellant stated that he drove R.D. to Target, gave her money to buy clothes, then took her to Wendy's for a meal; however, she left the restaurant when another man picked her up.

4

Appellant denied seeing R.D. on May 3, 2015. He claimed he picked her up from a hotel in College Park on May 4, 2015, and, at her request, drove her to the Comfort Inn. He testified that he reserved the room for her because he believed that R.D. would reimburse him from funds she was expecting from her family. He claimed that when he returned to take R.D. to purchase her train ticket home, he was apprehended. He denied the State's allegation that he had transported or induced R.D. to go any place for purposes of prostitution or had received any money R.D. obtained from prostitution. He also denied any relationship with Mosby or Perry.

Appellant's brother, Joe Rush, a witness for the defense, testified that appellant lived with him in a two-story townhouse in Greenbelt. Mr. Rush and the mother of his children, Angelia Johnson, both stated that they did not see appellant bring any women into their house on the weekend preceding appellant's arrest and neither recognized a photograph of R.D.

Additional facts will be included as they become relevant to our discussion, below.

## DISCUSSION

### I. Jury Instructions

#### A. Preservation of Grounds for Appeal

Appellant contends the trial court abused its discretion by giving a "verbal explanation" of the pattern instruction in response to a question posed by the jury during deliberations. Although he acknowledges that defense counsel did not raise any specific objections about the content of the instruction after it was given, appellant now argues the

5

court should have referred the jury back to the pattern criminal jury instructions that had already been provided to the jury verbally and in writing, rather than give a supplemental instruction. The State claims that the issue is not preserved under Md. Rule 4-325(e) because defense counsel did not clearly state the grounds for the objection after the instruction was given. The threshold issue we must address, therefore, is whether appellant has preserved the alleged jury instruction error for review.

Maryland Rule 4-325(e) governs the preservation of error in jury instructions and states:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.

"[T]he purpose of Rule 4-325(e) is 'to give the trial court an opportunity to correct its charge if it deems correction necessary.'" *Watts v. State*, 457 Md. 419, 426 (2018) (quoting *Gore v. State*, 309 Md. 203, 209 (1987) (additional citation omitted). It is well-established that the failure to object prevents a party from raising an alleged instructional error under Rule 4-325(e) on appeal. *Id.* at 426–27 (citations omitted). The Court in *Watts* reiterated the following requirements that must be satisfied to preserve an alleged jury instruction error for appellate review:

> [T]here must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless.

457 Md. at 426. (quotation marks omitted).

6

The Court noted, however, that "although strict compliance … is preferred," an objection that "substantially complies" with Rule 4-325(e) may yet preserve a claim of error for review. *Id.* at 427 (citing *Bennett v. State*, 230 Md. 562, 569 (1963)). Accordingly, where "the record reflects that the trial court understands the objection and, upon understanding the objection, rejects it," the issue was preserved. *Id.* at 428 (citing *Sergeant Co. v. Pickett*, 283 Md. 284, 290 (1978)). Similarly, an alleged error was deemed preserved for appellate review where the trial court recognized that an effective objection was made. *Id.* (citing *Bennett v. State*, 230 Md. 562, 569 (1963)). However, where the trial record reflected only a vague comment without an articulable basis for the objection, the Court in *Watts* noted that the issue was not preserved. *Id.* at 427 (citing *Bowman v. State*, 337 Md. 65, 68 (1994)).

Here, the jury sent out a note during deliberations, asking: "Page 11, para 1 and 2. Please clarify what is meant by all of the elements of Human Trafficking-Minor. We are confuse[d] on the 2[nd] para of "or" when it address' the elements." Following a discussion with counsel as required by Md. Rule 4-326(d)(2)(C), the trial judge replied with a note requesting the jury circle the confusing portion of the written instructions. A short time later, the jury submitted a copy of the instructions with the following section of Human Trafficking-Minor (MPJI-Cr 4:17:19) underlined: "the State must prove all of the elements of Human Trafficking and[.]" The jury also underlined the following section of the Accomplice Liability Instruction (MPJI-Cr 6:00): "with the intent to make the crime happen, knowingly aided, counseled, commanded, or encouraged the commission of the

7

crime, or communicated to a participant in the crime that he was ready, willing, and able to lend support, if needed[.]" The jury included a handwritten note in the margin asking "Does the state ha[ve] to prove all of these elements."

After the court conferred with both counsel on how to interpret the question, the following discussion occurred:

> [DEFENSE COUNSEL]: **I would say they have the instructions.**
>
> THE COURT: No, I'm not going to do that. I mean, I know the majority of the time, that's the proper response, but they're asking a specific question as to how the instructions are worded.
>
> ***
>
> [DEFENSE COUNSEL]: I just – **I'm going to go back to what I said before, just so the record is clear. They – I believe that the instruction is clear. And I am always a big fan of, unless we've made a mistake in the instruction, and I don't believe we have, telling them that they have the instructions** and –
>
> THE COURT: Yes, normally, when they have a question about law in general, but when they have a specific question about wording, and they're asking you, we don't understand or we're not clear on the wording, it's not good enough just to tell them –
>
> ***
>
> THE COURT: They say that they don't understand. And we have to give them assistance.
>
> [THE STATE]: Yes, sir.
>
> THE COURT: So for the State to prove guilt under the theory of accomplice liability, the State must prove that human trafficking of a minor occurred and that the defendant, with the intent to make the crime happen, either knowingly aided, counseled, commanded or encouraged the commission of the crime.

8

If any of those actions described took place and the State has proven it beyond a reasonable doubt, then the State has proven accomplice liability, or if the State has not proven the above, they could still prove accomplice liability beyond a reasonable doubt if they have proven that with the intent to make the crime happen, the defendant communicated to a participant in the crime that he was ready, willing and able to lend support if needed.

[THE STATE]:  Fine.  I'm fine with that.

THE COURT:  **You have your objection to me responding to the jury with anything other than, you already have the instructions, please refer back to the instructions as noted.**

[DEFENSE]: Okay.

\*\*\*

THE COURT: **And your objection still remains on the record.**

[DEFENSE]: Thank you.

THE COURT: **As to my response to the jury note, but in light of the decision I have made, you're agreeing that in light of what I'm going to do, that you don't agree with, that is the best way to go forward after my decision has been made.**

(Emphasis added.).  After delivering the instruction, the court noted that defense counsel's objection remained on the record.

The record before us clearly indicates that appellant's counsel specifically objected to the court reciting any instruction other than referring the jury back to the pattern instructions they had already received.  The trial court understood the objection and repeatedly acknowledged that it was made before ultimately rejecting it and ruling that the jury would receive a supplemental instruction.  Considering that the court recognized the earlier objection after delivering the instruction, defense counsel was not required to

9

reassert the objection to preserve the issue for appeal. Since appellant challenges the appropriateness of the trial court supplementing the jury instructions, which is the same issue objected to at trial, we find that the issue is preserved.

### B. Response to Question from Jury

The trial court responded to the note by delivering the following instruction to the jury:

> Under the theory of accomplice liability, the State must prove, regarding the underlined portion where it says, with the intent to make the crime happen, comma, knowingly aided, comma, counseled, comma, commanded, comma, or encouraged the commission of the crime, the State must be able to prove one of these phrases.
>
> That is, with the intent to make the crime happen, the State must prove the defendant knowingly aided; or with the intent to make the crime happen, the defendant counseled; or with the intent to make the crime happen, he commanded. All right? Or with the intent to make the crime happen – I'm sorry.
>
> And the last part, or encouraged the commission of the crime, again, with the intent to make the crime happen, the State must prove that one of these actions took place. Not all, but one of these actions.

Appellant contends that the court abused its discretion by providing the instruction above. We disagree and find no abuse of discretion on the part of the trial court.

Maryland Rule 4-325(a) requires that the trial court instruct the jury at the close of the evidence and permits the court to supplement the instructions at a later time, "when appropriate." The decision of whether to provide a supplemental instruction, including an instruction given in response to a question from the jury, is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Appraicio v.*

*State*, 431 Md. 42, 51 (2013) (citations omitted); *accord Sidbury v. State*, 414 Md. 180, 186 (2010) ("[W]hether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion."). As the Court of Appeals explained in *Appraicio*, "trial courts have a duty to answer, as directly as possible, the questions posed by jurors." 431 Md. at 53. The trial court's clarifying instruction "should not be 'ambiguous, misleading, or confusing.'" *Davis v. Armacost*, 234 Md. App. 71, 96 (2017) (quoting *Battle v. State*, 287 Md. 675, 685 (1980), *cert. granted*, 456 Md. 521 (2017)). Furthermore, a trial court's supplemental instructions must be an accurate statement of the law. *State v. Bircher*, 446 Md. 458, 463–64 (2016), *cert. denied*, 137 S. Ct. 145 (2016).

Appellant, citing *Ruffin v. State*, 394 Md. 355 (2006), appears to assert that trial courts should be constrained from providing any supplemental instruction that does not refer the jury back to the pattern instructions. In *Ruffin*, however, the Court of Appeals clearly specified that the requirement that trial courts "closely adhere[]" to the pattern instructions was limited to instructing jurors on the presumption of innocence and reasonable doubt. *Id.* at 373. He cites no authority that limits the discretion of the trial court to provide a supplemental instruction like the one given here.

Despite appellant's claim that the pattern instructions were "clear," the jury submitted a question evincing confusion and asked the court to clarify whether the State was required to prove every element in the accomplice liability instruction in order for the jury to find appellant guilty as an accomplice to human trafficking. Appellant provides no

11

support for his claim that the supplemental instruction was incorrect or somehow misled the jury. Rather, the trial court's instruction was an accurate statement of the law and a near verbatim recitation of the written pattern instructions. We therefore find no merit to appellant's claim that the trial court's supplemental instruction was an abuse of discretion.

## II. Sufficiency of the Evidence

Appellant contends the evidence was insufficient to sustain his convictions for human trafficking of a minor under Maryland Code, Section 11-303 of the Criminal Law Article ("C.L.") and receiving the earnings of a prostitute under C.L. § 11-304. Specifically, appellant argues that R.D.'s account was "largely uncorroborated" and that her testimony was contradicted by evidence that he did not live in the house that she described. He further asserts that no rational trier of fact could find that he intended to take or place R.D. anywhere "for the purpose of prostitution" because, as he testified, "he only intended to be her customer."

The State disagrees and points out that there was no conflict between R.D.'s testimony that appellant took her to a one-bedroom apartment that she believed was his house and the fact that he did not take her to the residence where he testified that he lived with his family. The State contends that "any conflicts in the evidence were for the jury to resolve." We agree with the State.

We review a challenge to the sufficiency of the evidence to determine "'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

12

*Grimm v. State*, 447 Md. 482, 494–95 (2016) (quoting *Cox v. State*, 421 Md. 630, 656–57 (2011)); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Because the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence." *Smith v. State*, 415 Md. 174, 185 (2010) (citing *Tarray v. State*, 410 Md. 594, 608 (2009) (additional citation omitted). Rather, we defer to any reasonable inferences a jury could have drawn from the evidence in reaching its verdict and determine whether there is sufficient evidence to support those inferences. *State v. Mayers*, 417 Md. 449, 466 (2010). Accordingly, the sole concern of the appellate court is "'whether the verdict was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt.'" *State v. Manion,* 442 Md. 419, 431 (2015) (quoting *Taylor v. State*, 346 Md. 452, 457 (1997)). Importantly, "it is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case." *Mayers*, 417 Md. at 466 (quoting *State v. Albrecht*, 336 Md. 475, 478 (1994)).

Appellant challenges his conviction for human trafficking of a minor under C.L. § 11-303(a)(1)(i)–(iii) and (b)(1), which states, in relevant part: "[a] person may not knowingly take or cause another to be taken; place, caused to be placed; [or] persuade, induce, entice, or encourage another to be taken to or placed in any place for prostitution . . . a victim who is a minor." "Prostitution" is defined as "the performance of a sexual act,

13

sexual contact, or vaginal intercourse for hire." C.L. § 11-301(c). He was also convicted of receiving the earnings of a prostitute under C.L. § 11-304, which states: "[a] person may not receive or acquire money or proceeds from the earnings of a person engaged in prostitution with the intent to…promote [; or] profit from a crime under this subtitle[.]"

Appellant argues that, because he produced two witnesses to contradict R.D.'s testimony that he lived in a one-bedroom apartment, this Court must find that the evidence introduced by the State was insufficient to convict him. However, appellant's claim that R.D.'s testimony was inconsistent overlooks a number of inconsistencies revealed during his testimony. For example, appellant testified that several claims in his written custodial statement were incorrect and coerced by the police, despite having completed an advice of rights form that indicated that his statement was voluntary. He denied giving R.D. "mollies" at trial, although he previously admitted to police that he gave her the drug. He also testified that, on May 3, 2015, he had intercourse with two women who worked as prostitutes, which was contradicted by his custodial statement that he had intercourse with one woman while the other woman slept. The State also pointed out that appellant was unable to state the model year of the car he was driving when he was arrested, despite his detailed recollection of dates, times, and events related to the incident.

The State presented evidence that R.D. identified appellant by the alias "Caddy" when he was arrested, as well as in court. R.D. testified that appellant drove her to two residences where she engaged in prostitution and he took the money she had received in exchange for sexual activity. R.D.'s testimony was corroborated by the Cellbrite report,

14

which indicated that the telephone number that appellant provided to police was consistent with the number saved in R.D.'s contacts as "BO$$." R.D.'s testimony that appellant would not allow her to go home because she owed him money was consistent with expert testimony describing debt bondage. Finally, records from the Comfort Inn reflected that appellant rented the room where Detective Hill met R.D. and agreed to pay her a specific sum of money in exchange for sexual acts.

Based upon the verdicts in this case, it is apparent that the jury did not credit appellant's testimony. We conclude that the evidence was sufficient to sustain appellant's convictions for human trafficking of a minor and receiving the earnings of a prostitute beyond a reasonable doubt.

### III. Merger of Sentences

Appellant's final argument is that the trial court erred in ordering separate sentences for human trafficking of a minor and receiving the earnings of a prostitute. Although he was not charged or convicted under C.L. § 11-303(e)(1), which prohibits "knowingly benefit[ing] financially or by receiving anything of value in a venture that includes an act described in subsection (a) or (b)," appellant claims that this provision provides "a blanket prohibition against receiving the earnings of a prostitute," and that the rule of lenity requires that his conviction under C.L. § 11-304 merge with his conviction under C.L. § 11-303 for sentencing purposes. The State disagrees and argues that appellant's convictions do not merge because the plain language of the statutes demonstrates clear

legislative intent to punish human trafficking and receiving the earnings of a prostitute separately.

The merger doctrine derives from the Fifth Amendment protection against double jeopardy afforded by the U.S. Constitution and Maryland common law and prohibits multiple punishments for the same offense. *Brooks v. State*, 439 Md. 698, 737 (2014) (citing *Nicolas v. State*, 426 Md. 385, 400 (2012)). A trial court's determination as to whether a sentence is substantively illegal under Md. Rule 4-345(a) is a question of law subject to *de novo* review. *State v. Crawley*, 455 Md. 52, 66 (2017) (citing *Meyer v. State*, 445 Md. 648, 663 (2015)). There are three grounds on which a defendant's convictions may be merged for sentencing purposes: "(1) the required evidence test; (2) the rule of lenity; and (3) the principle of fundamental fairness." *Johnson v. State*, 228 Md. App. 27, 46 (2016) (quoting *Carroll v. State*, 428 Md. 679, 693–94 (2012)), *cert. denied*, 450 Md. 120 (2016) (internal quotation marks omitted).

Appellant was convicted of three counts of human trafficking of a minor victim and sentenced to twenty-five years' imprisonment with seven years suspended. The trial judge, consistent with C.L. § 11-303, instructed the jury as follows:

> In order to convict the defendant of the crime of human trafficking, the State must prove: That the defendant *knowingly took [R.D.] to and/or placed [R.D.] in a place and that [R.D.] was taken to and/or placed in that place for prostitution.* [] That the defendant *knowingly induced [R.D.] to be taken to or placed in any place; and that [R.D.] was induced to go to that place for prostitution.* "Prostitution" means a sexual act, sexual contact or vaginal intercourse for hire.

16

(Emphasis added). He was also convicted of receiving earnings of a prostitute and sentenced to a consecutive term of ten years' imprisonment. The trial court instructed the jury as follows:

> The defendant is charged with receiving the earnings of a prostitute. The State must prove: That the defendant *received or acquired money or proceeds from the earnings of [R.D]*. [R.D.] was engaged in the act of prostitution with the intent to either promote a sex-trafficking crime or profit from sex-trafficking.

(Emphasis added).

"The rule of lenity is a common law doctrine that directs courts to construe ambiguous criminal statutes in favor of criminal defendants." *Alexis v. State*, 437 Md. 457, 484–85 (2014). Essentially, the rule of lenity provides that two statutory offenses may not be separately punished if the Legislature intended for them to be punished in one sentence. *See id.* When evaluating a claim for lenity,

> we look first to whether the charges 'arose out of the same act or transaction,' then to whether 'the crimes charged are the same offense,' and then, if the offenses are separate, to whether 'the Legislature intended multiple punishment[s] for conduct arising out of a single act or transaction which violates two or more statutes[.]

*Clark v. State,* 218 Md. App. 230, 255 (2014) (citing *Alexis*, 437 Md. at 484–85). This Court has previously explained that "we do not follow any 'rigid or fixed criteria' in applying the rule of lenity," and "we do not create an ambiguity where none exists." *Latray v. State*, 221 Md. App. 544, 556 (2015) (citations omitted).

In our view, the statutes prohibiting human trafficking and receiving the earnings of a prostitute punish different actions by appellant. The evidence at trial reflects that

17

appellant, operating under an alias, encouraged R.D. to take a train from North Carolina to Washington, D.C. When she arrived, she learned she was expected to engage in prostitution and was placed in debt bondage. In our view, appellant's actions in recruiting R.D. to travel to Maryland for this purpose, standing alone, was sufficient proof of human trafficking. Once R.D. was in appellant's charge, however, he also gave her money and then told her that she could not return to North Carolina until the debt was repaid. He subsequently transported R.D. to outcalls and placed her in a hotel where she met men for purposes of prostitution. These actions were also clear violations of the human trafficking statute. Thus, appellant's human trafficking convictions were predicated on actions unrelated to his taking $200 from R.D., which she had "earned" working as a prostitute.

Furthermore, the statutory language reflects a clear intent on the part of the Legislature to provide for separate punishments for a conviction of human trafficking and receiving the earnings of a prostitute. First, C.L. § 11-302 explicitly states that "[a] person charged with a crime under this subtitle may also be prosecuted and sentenced for violating any other applicable law." The Legislature placed a finer point on its intent to punish the crimes separately by dictating that the intent to violate another provision of subtitle 11, which includes human trafficking, is an express element of the crime of receiving the earnings of a prostitute. We are therefore unpersuaded that the Legislature intended that receiving the earnings of a prostitute merge into human trafficking for sentencing purposes.

18

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**